(October 17, 1922.)

STATE, Respondent, v. LEONARD HURST, Appellant.

[209 Pac. 724.]

CRIMINAL LAW—EVIDENCE—SUFFICIENCY OF TO SUPPORT VERDICT—CIR-
CUMSTANTIAL EVIDENCE INSUFFICIENT WHERE RECONCILABLE WITH
DEFENDANT'S INNOCENCE.

1. Evidence examined and *held* not sufficient to support a conviction for grand larceny.

---

**Publisher's Note.**

Necessity that circumstantial evidence, in order to convict, exclude every reasonable hypothesis except guilt of defendant, see note in **Ann. Cas. 1913E, 428.**

2. In order to sustain a conviction based upon circumstantial evidence, the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and·if the evidence can be reconciled either with the theory of innocence or of guilt, the law requires that the theory of innocence be adopted.

APPEAL from the District Court of the Fifth Judicial District, for Franklin County. Hon. Robert M. Terrell, Judge.

Appellant was. convicted of the crime of grand larceny. Judgment of conviction. *Reversed* and the cause *remanded*.

P. J. Evans, for Appellant, cites no authorities.

Roy L. Black, Attorney General, and Jas. L. Boone, Assistant, for Respondent.

Where there is a conflict in the evidence and there is sufficient competent evidence to sustain the verdict, such verdict will not be disturbed. (*State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Downing*, 23 Ida. 540, 130 Pac. 461; *State v. Mox Mox*, 28 Ida. 176, 152 Pac. 802; *State v. White*, 33 Ida. 697, 197 Pac. 824; *State v. Colvard*, 33 Ida. 702, 197 Pac. 826; *State v. Neidermark*, 35 Ida. 703, 208 Pac. 232.)

BUDGE, J.—Appellant was charged with the crime of grand larceny, for the alleged stealing of a cow, the property of one Silas Ricks, on November 4, 1917. From a judgment of conviction and sentence to serve a term in the penitentiary for not less than one or more than fourteen years, this appeal is taken.

Appellant makes three assignments of error, but we find it necessary to discuss but one, viz., that the evidence is not sufficient to support the verdict.

We have carefully examined the transcript in this case and find that·the evidence for the state discloses substantially the following facts:

That the complaining witness, Ricks, was the owner at one time of a small, red cow, said to have been a cross between

a Jersey and Durham. The witness Ricks in describing his cow testified that she was hip-knocked, which was very noticeable, and that it would be hard for any person who saw the cow not to notice this deformity, that she had very peaked hips, a small head and large eyes. Ricks testified that the last time he saw this cow was in June, 1917, but that he heard during the early part of November, 1917, that she was up near a Mr. Fredericksen's field, about five or six miles west of Weston.

Ricks and a neighbor made search for the animal, but did not find her. Finally Ricks went to the slaughter-house of one Linquist, situate in the town of Weston, where, according to his testimony, he found evidences of an animal having been recently slaughtered. He further testified that he found, about a rod south of the slaughter-house, certain legs belonging to an animal that had been recently slaughtered, but was not permitted, under the ruling of the court to testify whether the legs were the legs of the cow owned by him, but was permitted to testify that the color of the hair remaining on the head and legs was the same color as that of his cow. He also testified that down in the brush, about 75 or 100 yards from the slaughter-house, he found the entrails of an animal, and later found the head of an animal, which he described as a small head, with projecting eyes and large eye-sockets, being a head similar to the head of the animal he lost, but was not permitted to testify that in his best judgment the head and feet found by him were the head and feet of the cow that he had lost, but did testify that the head and feet belonged to the same animal.

It appears that when this head was found by the prosecuting witness, he hid it and subsequently went back to the slaughter-house with the sheriff, where he exhibited what he claimed to be the head he had theretofore found, which was marked and again hid.

Upon the trial he identified the head and legs as the ones he had theretofore found, and which were admitted in evidence as a part of the state's case.

He further testified that he overheard a conversation between the sheriff and appellant, in which the sheriff asked appellant what he had done with the hide of the animal he sold to Linquist, to which appellant answered that he had sold the hide to a small, heavy-set man who was passing through, driving a bay team and an old wagon in which he had four or five beef hides and some pelts.

The prosecuting witness was not able to state whether there was a brand upon this particular animal or not, or in what manner she was ear-marked other than that her ears were pretty badly cut up, that she was a very old cow, that her feet were badly worn, and that she had large eyes, a dish face and a large girth.

Joseph Allen, a witness for the state, testified that during the month of November, 1917, he had in his field a little, red cow, with a hip knocked down, belonging to the prosecuting witness, that the last time he saw her was on the evening of November 3, 1917, that his field is just south of Weston village and east and south of the Linquist slaughter-house, and that the color of the legs and head of the Ricks' cow was the same as that of exhibits "A" and "B."

Frank T. Merrill, sheriff of Franklin county, and also a witness for the state, testified that when he talked with appellant the latter stated that he had sold the hide from the cow which he sold to Linquist to a Jew, a stranger, but could give no further information on that subject. Merrill corroborated Ricks with reference to the statement made by appellant that he and Lindquist killed the cow, that Lindquist kept three-quarters and appellant kept one-quarter and the hide. He also testified that appellant made the statement that he, appellant, had no cattle, and that Ricks had not found the head and did not tell him that he had found the head and hid it, before he went with Ricks to the slaughter-house.

Anton Kohler, a witness for the appellant, testified that he knew the Ricks' cow, that she was at his ranch, that he saw her in the month of November, that she was there for six weeks, off and on, that she was eating trash in the road at

different times when he saw her, that she got into his hay and he drove her off, that she was a red, hip-knocked cow, that he saw some boys drive her south, toward the Utah state line, with fourteen or fifteen head of cows and heifers and a few horses, that the cow never returned to his place or bothered him any more, that she would not do for beef, and that her deformity was very noticeable.

Constable Jensen, a witness called on behalf of appellant, testified that appellant's father had certain cows, one of which was in his, Jensen's field and was taken away on Sunday, November 4, 1917, that this cow was a small, red cow, that he had informed both Hurst, Senior, and the appellant, that this cow was in his field, that it had been there for about a month, that it was branded with a "J. H." on the left ribs, that it was taken away from his place on Sunday, November 4, 1917, and that it had no physical deformity.

Royal Crockett, also a witness for appellant, testified that he saw the Hurst cow, with the Hurst brand on, in the Jensen field, about November 1, 1917, and saw the same cow on November 4, 1917, being driven through Weston in the middle of Sunday afternoon, while people were going to or coming from church, that Jensen's field was right on the road to the slaughter-house, and that appellant was following behind the cow on horseback.

Linquist, the butcher, a witness for appellant, testified that he bought a small, red cow from appellant, on November 4, 1917, that she was in fair condition, that there were no deformities, that he helped drive the cow into the slaughter-pen, that he killed her and helped to skin her and if she had been hip-knocked he would have known it, and that there was no difference in the appearance of the cow that he bought from appellant than any normal cow.

Alfred Lemon testified that he also saw the Hurst cow, with the Hurst brand on, in Jensen's field, shortly before November 4, 1917.

The rule is well settled, as urged by the state, that where there is a conflict in the evidence and there is sufficient com-

petent evidence to sustain the verdict, such verdict will not be disturbed.

An examination of the entire record in this case, however, fails to convince us that there is sufficient competent evidence to sustain the verdict. There is no evidence that appellant was ever in possession of the Ricks cow, or that Ricks was the owner of the cow on November 4, 1917, when it was alleged to have been stolen. Neither does the evidence disclose that if appellant took the Ricks cow he did not do so with the consent of the owner. In other words, the state wholly failed to prove that appellant on the fourth day of November, 1917, at Weston, in the county of Franklin and state of Idaho, did then and there, wilfully, unlawfully and feloniously, steal, take and carry away one cow, color light red, then and there the property of one Silas Ricks. In order to establish, either by pleading or proof, the crime of grand larceny, it must appear that the property belonged to some particular person, that it was taken from him without his consent and against his will, and with a felonious intent to steal it, and deprive the owner permanently of its use. These allegations are material and must be established beyond a reasonable doubt. Unless so established the evidence is totally insufficient to sustain a verdict of conviction for grand larceny.

Moreover, this is a case of circumstantial evidence, and falls clearly within the rule announced in *State v. Marcoe*, 33 Ida. 284, 193 Pac. 80, to the effect that where the evidence can be reconciled either with the theory of innocence or of guilt, the law requires that the theory of innocence be adopted.

The good reputation of appellant was established by the testimony of a number of disinterested witnesses, which, taken in connection with the further facts that the cow was driven along the public highway, where both appellant and the cow were seen by at least one witness and the cow recognized as one belonging to appellant's father, that it was slaughtered in broad daylight, and a portion of the quarter retained by appellant was openly disposed of, does not carry

36 Idaho.—11

conviction to an unprejudiced mind that appellant was guilty of wilfully, unlawfully and feloniously committing the crime of grand larceny.

We are not disposed to affirm a judgment of conviction of a crime carrying a long term of imprisonment, where it so clearly appears that the verdict rendered against the defendant was the result of passion or prejudice.

From what has been said it follows that the judgment in this case should be reversed and the cause remanded, with instructions to grant a new trial. It is so ordered.

Rice, C. J., and Dunn and Lee, JJ., concur.