193 P.2d 838

**STATE v. KENWORTHY et al.**

No. 7408.

Supreme Court of Idaho.

May 14, 1948.

C. V. Boyatt, of Pocatello, and Arthur E. Johnson, of Montpelier, for appellants.

Robert E. Smylie, Atty. Gen., and J. R. Smead, Asst. Atty. Gen., for respondent.

BUDGE, Justice.

Appellant, Dean William Kenworthy, was convicted of the crime of grand larceny. This appeal is from the judgment and order denying appellant's motion for new trial.

The action of the court in denying the motion for new trial is not assigned as error, neither is it discussed in appellant's brief, nor was it argued at the hearing, therefore is not here for determination.

We will proceed to discuss the errors relied on for reversal of the judgment in the order in which they are stated in appellant's brief.

The first error assigned attacks the sufficiency of the information upon two grounds:

"a. Said information fails to allege ownership of the property alleged to have been stolen in any person or in any legal entity capable of owning property.

"b. Said information fails to particularly describe the property alleged to have been stolen, so as to state the facts constituting the offense in ordinary and concise language, or to allege the particular circumstances of the offense charged."

The charging part of the information alleges:

"The said Dean William Kenworthy * * * on the 6th day of May, A.D. nineteen hundred and forty-seven at the County of Franklin, in the State of Idaho, did then and there steal, take and carry away from the Palmer Implement Company store in Preston, Idaho, certain saddles and blankets, headstalls, gloves, riding boots, a twenty-two rifle, and a Remington typewriter, the property of the said Palmer Implement Company, and of the

value of about Fifteen hundred Dollars. Contrary to the form, force, and effect of the statute in such cases made and provided, * * *"

The point appellant seeks to make is, that the information is defective and void in that the charging part thereof does not allege that the Palmer Implement Company is a corporation or a partnership, or an entity capable of owning property; that in the instant case the Palmer Implement Company may be a partnership, subjecting appellant to further indictments and prosecutions by any one of the partners in the ownership of the property lost, and that this is particularly true by reason of lack of description of the property alleged to have been stolen, and the lack of proof of ownership.

Under the provisions of sec. 19-1315, I.C.A., ownership of stolen property need not be alleged with precision where the alleged crime caused an injury to another. Said statute reads as follows:

"Erroneous designation of person injured.—When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

In State v. Farris, 5 Idaho 666, 51 P. 772, this court held:

"Where the information alleges one C. to be the owner of the stolen property, and the proofs show that he was in possession of the property as the agent of the real owner, with full power to sell or otherwise dispose of the same, held sufficient to uphold the allegation in the information." See, also, State v. St. Clair, 6 Idaho 109, 53 P. 1.

In State v. Rathbone, 8 Idaho 161, 67 P. 186, the title to the stolen property was alleged in the information to be in George M. Brown, and the proof showed it was the property of George M. Brown and R. L. Brown. It was held that the variance between the allegation and proof was not fatal.

In State v. Ireland, 9 Idaho 686, 75 P. 257, 258, we find the following language:

"Could it possibly prejudice any substantial right of the defendant whether the stolen animal belonged to Bybee alone, or to Bybee & Jones as partners? We think not. Bybee certainly had an interest in it, if he was only half owner thereof.

"In the Texas case above cited [Henry v. State, 45 Tex. 84] the defendant was indicted for the theft of 'two certain oxen, of the value of $20 each, and both of the value of $40, the property of Mrs. Mary Cobb.' Upon the trial it was shown that the oxen belonged to Mrs. Mary Cobb and others. It was held that the variance between the proof and the averment in the indictment was not fatal."

Further quoting from the above case:

"Section 8236, Rev.St.1887 [sec. 19-3602, I.C.A.], provides as follows: '* * * Neither a departure from the form or mode prescribed by this Code in respect to· any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a sub-·stantial right.' "

It is sufficient to allege ownership in T & C without stating whether it constituted a partnership or corporation. People v. Goggins, 80 Cal. 229, 22 P. 206. Likewise, it is sufficient to allege the property to be that of certain persons doing business under the firm name of H. E. & Co., without giving their names. People v. Ah Sing, 19 Cal. 598; People v. Henry, 77 Cal. 445, 19 P. 830.

In People v. Nash, 1 Idaho 206, it is held:

"An objection to an indictment that it ·sets forth no sufficient charge of a criminal ·offense, should not be allowed to prevail in a doubtful case, but only when the insufficiency is so palpable as clearly to satisfy the mind of the judge that a verdict thereon would not authorize a judgment. It is not necessary for the prosecution to ex-·clude every possible defense in order to se-·cure a conviction."

The cases heretofore cited are substantially supported by State v. Gee, 48 Idaho 688, 284 P. 845; State v. McDermott, 52 Idaho 602, 17 P.2d 343; Evershaw v. Moran, 57 Nev. 417, 65 P.2d 877; James v. State, 53 Ariz. 42, 84 P.2d 1081; Edson v. State, 77 Okl.Cr. 100, 139 P.2d 198; People v. Johns, 69 Cal.App.2d 737, 160 P.2d 102, 106.

We have concluded that the ownership of the property is sufficiently charged in the information. The proof upon the trial established the fact that there was only one Palmer Implement Company in Preston; that said company was a corporation; that Leo Palmer was a stockholder and manager of said corporation, in possession of its property with power to sell and dispose of the same, therefore, appellant was not prejudiced in the respect complained of. There is no merit in the contention that the ·description of the property set out in the information was not sufficient to inform appellant of the nature and character of the charge against him.

The omission of the word "felonious" from the information charging grand larceny is not a fatal defect rendering it insufficient to charge the crime where the information alleges that defendant did steal, take, and carry away the property of another. State v. Basinger, 46 Idaho 775, and cases cited on pages 778-780, 271 P. 325.

Appellant's second assignment is:

"That the court misdirected the jury in matters of law, and erred in deciding questions of law arising during the course of the trial as follows:                  . ·.

"a. The court erred in giving Instruction No. 6.

"b. The court erred in refusing to give defendant's requested instructions Nos. 1, 2, 3 and 4.

"c. The court erred in overruling defendant's motion to dismiss the information at the conclusion of the State's case.

"d. The court erred in overruling defendant's motion to dismiss the case at the conclusion of the State's case.

"e. The court erred in permitting the State to reopen its case over defendant's objection."

Instruction No. 6 reads:

"You are instructed that possession of recently stolen property is, in itself evidence from which the jury may find a verdict of guilty on the charge of grand larceny, unless such possession is reasonably and satisfactorily explained so as to indicate such possession to be innocent or lacking a felonious intent to deprive the owner of said property."

The objection made by appellant to the instruction is pointed to the expression "unless such possession is reasonably and *satisfactorily* explained *so as to indicate such possession to be innocent or lacking a felonious intent to deprive the owner of said property,*" and that that portion of the instruction "puts the burden upon the defendant to not only reasonably explain his possession, but to the jury's satisfaction to prove that his possession was innocent or lacking any intention to deprive the owner of said property. He thus has the burden of not only proving his innocence of grand larceny, but that of receiving stolen property."

Appellant argues that it was error to use the word "satisfactorily" in the instruction. We are not of the opinion that by the use of the word "satisfactorily" the court told, or intended to tell the jury that appellant was required to prove anything.

There is no question raised or suggestion that the larceny was committed by someone; that appellant had in his possession the recently stolen property shortly after the same was stolen. The principle has frequently been stated: "As men generally own the personal property they possess, proof of possession is presumptive proof of ownership. But possession of the fruits of crime recently after its commission, is prima facie evidence of guilty possession." 1 Greenl. Ev. sec. 34.

"It has never been supposed that possession of property recently stolen was of itself evidence of innocence; but, on the contrary, the average juror would, if uninstructed, at once assume from such unexplained possession that the possessor was the thief." People v. Luchetti, 119 Cal. 501, 51 P. 707, 709.

In 52 C.J.S., Larceny, § 110, p. 934, the following rule is announced:

"The presumption or inference of larceny arising from the possession of recent-

ly stolen property may be rebutted by a satisfactory explanation of how accused obtained possession. Where accused gives a reasonable and credible explanation of his possession, or one which is sufficient to raise a reasonable doubt as to his guilt, the presumption or inference is overcome, and the burden is on the prosecution to establish the falsity of the explanation.

"The sufficiency of accused's explanation must be tested by the same rules that apply to evidence generally. While the reasonableness or credibility of his explanation is ordinarily a question of fact for the jury, * * *. On the other hand, if the explanation is unreasonable, improbable, or otherwise unsatisfactory, and not deserving of belief, the jury may disregard it, [State v. Davis, 57 Idaho 413, 65 P.2d 1385; State v. Jackett, 45 Idaho 720, 264 P. 875; State v. Collett & Ireland, 9 Idaho 608, 75 P. 271] even though the prosecution does not offer any evidence in rebuttal.

"The explanation that accused purchased the property from a third person ordinarily is entitled to little consideration unless corroborated, * * *"

and is not a sufficient explanation unless corroborated in some degree. State v. Davis, supra; State v. Smith, 4 Idaho 733, 44 P. 554.

The instruction complained of based upon the undisputed fact that appellant was in possession of the property shortly after it was stolen was of itself evidence to be considered by the jury from which the guilt of appellant might be inferred. (State v. Davis, supra; State v. Jackett, supra; State v. Vanek, 59 Idaho 514, 84 P. 2d 567; State v. Bogris, 26 Idaho 587, 144 P. 789; State v. Sanford, 8 Idaho 187, 67 P. 492; Note, 101 Am.St.Rep., page 492), in the absence of a reasonable and satisfactory explanation by appellant that the possession of such recently stolen property was innocent, lacking felonious intent to deprive the owner of his property. The jury, by its verdict, found appellant's explanation of his possession of the recently stolen property neither reasonable nor satisfactory.

In State v. Gilbert, 65 Idaho 210, 142 P. 2d 584, 585, the rule is stated thus:

"Where the evidence as to the theft of meat [here the personal property described in the information] was uncontradicted, and defendant was in possession of meat [or as here, the property described in the information] immediately following the theft, in absence of satisfactory explanation as to the facts of possession, a presumption was raised that defendant committed the larceny."

The use of the word *satisfactorily* in the instruction placed no burden on appellant to prove his innocence, he was simply called upon to make a satisfactory explanation, which was reasonable and probable, to overcome the inference of *guilt*, and to satisfy the minds of the jurors that his possession was innocent.

It follows that Instruction No. 6 was not prejudicially erroneous.

Appellant assigns as error the refusal of the court to give his requested instructions Nos. 1, 2, 3 and 4.

The refusal of the court to give the above instructions was not prejudicially erroneous for the reason that Nos. 1, 2 and 3 were substantially incorporated in Instruction No. 6 given by the court and, under the authorities cited herein, was sufficient to support the court's refusal. Instruction No. 4 was properly refused, the same being merely argumentative, and not applicable to the facts disclosed by the record.

An examination of the instructions given discloses the court instructed the jury to consider the instructions together and not to single out any one instruction and draw from it an unreasonable conclusion. When the instructions are so considered and applied to the facts in this case, they are eminently fair to appellant.

Subdivisions c, d and e, under assignment of error No. 2, may be considered and disposed of together. They seek to raise the point that the court erred in overruling appellant's motion to dismiss the information at the conclusion of the State's case; in overruling appellant's motion to dismiss the case at the conclusion of the State's case; and in permitting the State to reopen its case over appellant's objection.

Taking up the latter subdivision first, the rule in this jurisdiction is, that the granting or denial of a motion to reopen the case is within the sound, legal discretion of the trial court. Hall v. Jensen, 14 Idaho 165, 93 P. 962; Union Sav., etc., Co. v. McClain, 23 Idaho 325, 130 P. 84; Kinzell v. Chicago, etc., Ry. Co., 33 Idaho 1, 190 P. 255.

There is no merit in the other two assignments. However, the purpose of the motions is directed against the sufficiency of the information, already disposed of, and the sufficiency of the evidence to sustain the verdict, hereafter discussed.

Coming now to the third and last assignment of error, namely, that the evidence is insufficient to sustain the verdict and the judgment based thereon.

For the sake of brevity we will not undertake to discuss the evidence in detail, but call attention to such pertinent testimony establishing the guilt of appellant beyond a reasonable doubt.

The larceny with which appellant is charged was committed during the night of May 6, or prior to 6:30 a. m., May 7, 1947. Leo Palmer, manager of Palmer Implement Company, left the store in which the merchandise was kept for sale about 8:30 p. m., May 6th, and returned to the store on the morning of the 7th about 6:30 a. m.; Appellant admitted he was in Salt Lake City on May 5th and left there early that morning; that he did not register at a

hotel, and was alone; that he was driving a Ford car. Preston is approximately 115 miles north; there is a paved highway between Salt Lake and Preston.

Appellant, testifying in his own behalf, stated he was in Reno, Nevada, on the night of May 7th; that he met Amick for the first time on the night of May 8th. On the night of May 7th, about 9:15 p. m., he was in the Palace Club and a man tapped him on the shoulder, and it was one Burnside, whom he had known in Los Angeles; that Burnside introduced him to a man by the name of Cole from Waco, Texas; that Burnside told him Cole had just broken up partnership with a brother in a saddle shop in Waco; that Cole had traded his car and some merchandise he had with him for a new Ford pickup, and that he had come to Reno with the intention of getting rid of some saddles taken out of stock at Waco; that Burnside and Cole asked him if he could assist them in getting rid of the saddles; they told him he could make $300 or $350 if he cared to get rid of the saddles for them. He asked them how much they wanted and they said $600 "and I said that is a little more than I have got and they asked me how much money I had and I looked and I had around $500.00 in my pocket." They had a pickup truck and a one-horse trailer; the saddles, truck and trailer were parked on East Fourth Street "right next to the Junior High School in Reno"; they went over where the truck was parked; they had a tarpaulin on the truck and some saddles and articles in the truck. They figured the price, and Cole said, "I tell you what I will do if you want to buy them I will take $525.00." He told them he had about $500; they said they had a deal on at Fallon and had to have $400, "so I consented to buy the saddles and gave them $425.00." They said when he paid the balance of $100 on Sunday at the State Fairgrounds they would give him a bill of sale for the saddles. He took the saddles and put them in his car, proceeded to look for a man by the name of Russom, whom he met around Harold's Club, and then went home. He said his mother was asleep when they got home, and he did not want to wake her, so he left the saddles in the car until the next morning; that he met Amick after he purchased the saddles; that thereafter he sold certain of the saddles around town. May 14th when he was arrested there were present at his mother's home, his mother and himself, Amick and Russom; that he was charged with grand larceny.

On cross-examination appellant testified, among other things, that he left Salt Lake May 5th; that he stayed there over night but did not register at any hotel; that he did not sleep; that he was driving a Ford car. He testified that on his return from Salt Lake to Reno he first stopped at Wendover, next stop was Wells, Nevada; then Elko; that he did not register at any hotel; next stop was Winnemucca, where he stayed 12 to 14 hours, but did not register

at any hotel or tourist park; from Winnemucca he went to Reno; that he never paid Cole the $100, and that he never saw him again. He said he got ten saddles, some blankets, bridles, camera, couple of fish poles, pair of boots, and a typewriter, which he said he did not purchase; he estimated the value of the typewriter at $100; that he had no suspicion it was stolen property; that he was acquainted with the value of saddles. He was asked the following questions:

"Q. And what would you say a saddle like these two that are on this bannister would be worth? A. Retail value?

"Q. Yes. A. Approximately, $185.00.

"Q. For each one of them? A. Yes, sir.

"Q. $185.00. And how many saddles of that kind were there? A. Four.

"Q. And how much would the other saddles retail for? A. About sixty, $55.00.

"Q. How many were there of them? A. Well, there were three or four, four of those I think.

"Q. So that the retail value of those eight saddles, if I have computed right, would be $960.00? A. That would be the retail, yes.

"Q. And you know what a typewriter like that one introduced in evidence is worth? A. I never purchased a typewriter.

"Q. You had that typewriter in your possession, didn't you? A. I couldn't say the same typewriter. I had a Remington Rand typewriter. I have no serial number to go by; I am not positive."

He testified further that he sold eight saddles and got different prices for each of them; that no one rode with him from Salt Lake to Reno; that he could give the name of no one he knew between those points.

From the testimony of the State's witnesses it was shown a circular containing a description of the stolen property was circulated quite generally; that the officers in Reno received a copy, and that the property described in the circular corresponded to the property found in appellant's possession, also the property he had sold in and around Reno; that the typewriter bore the same serial number as the one on the invoice in the possession of the Palmer Implement Company; that the property stolen was estimated to be worth from $1300 to $1500, being the invoice price.

William J. Backer, connected with the police department at Reno, a witness for the State, testified that the department had information prior to May 6th that appellant was bringing in some "hot" saddles, and they had him under observation; that appellant had sold various saddles to different parties and gave his name as Kelly.

"Q. Have you learned who that Mr. Kelly is? A. Yes, that is Kenworthy.

"Q. Kelly then is an alias for Kenworthy? A. That is right."

In McCutcheon v. State, 140 Tex.Cr.R. 74, 143 S.W.2d 611, the rule is stated:

"Evidence that defendant sold stolen property to wrecking company soon after theft was discovered, and that defendant used an assumed name when selling property, warranted conviction for theft."

The following question was propounded to witness Backer on cross-examination:

"Q. Did I understand you correctly you stated Mr. Amick stated to you that Mr. Kenworthy had traded a Cadillac automobile for a pickup and the saddles? A. Yes, that is right Amick stated Kenworthy came into possession of these saddles through a deal trading a Cadillac and receiving a pickup truck and these saddles."

Joseph L. Kirkley, Captain of Detectives at Reno, testified, without objection, that Amick and Russom stated that appellant got the merchandise involved herein in Los Angeles, trading a Cadillac car for it.

"Q. And what did Mr. Amick say as to how the trade was made; what was his story? A. He said that Mr. Kenworthy had told him he had got the saddles through trading of a Cadillac car in Los Angeles."

E. L. Hansen, Sheriff of Franklin County, a witness for the State, testified, on direct examination, as follows:

"Q. Was a statement made by either one of them? A. Yes, sir, Amick said it was a trade that it had happened in and around Los Angeles.

"Q. Did Mr. Kenworthy make a statement? A. Kenworthy's statement was that he bought them."

*    *    *    *    *

"Q. Was there anything said on that trip? [back to Preston from Reno] A. They were talking back and forth and [we] were listening and they stated about trading in Los Angeles, one remark was made in my presence I heard Deputy Mickelsen say you would have had to have an airplane to have traded and got down to Reno at the time and sold them, * * *

"Q. Did you hear anything about the name of Cadillac mentioned? A. Cadillac was traded in on this.

"Q. Who made that statement? A. I think Kenworthy did.

"Q. Kenworthy stated on your trip back from Reno that a Cadillac had been traded in on the deal? A. Yes.

"Q. Was there anything said about Mr. Kenworthy being in Salt Lake? A. I think we asked if he had been up there and he said he had been out this way and made several trips that took quite a lot of traveling according to their conversation, yes, to Salt Lake and through here. * * *"

There is also evidence that plaster paris casts were made of the car tracks at the

rear of the Palmer Implement Company building; that the casts of the car tracks were compared with the tread on the Ford car driven by appellant, and compared properly with the tire treads.

N. G. Mickelson, deputy sheriff of Franklin county, a witness for the State, testified, without objection, that Amick stated the merchandise had been picked up in California, and a Cadillac was traded for the stolen property. The witness further testified:

"Q. Were you present with the sheriff when the defendants were brought back to Preston? A. Yes, sir

"Q. You rode in the same car? A. Yes, sir.

"Q. Was there any conversation—did any conversation take place while you were on that trip as to where these saddles and other merchandise was obtained? A. Yes, sir, the same statement was made on the way back from Reno.

"Q. And who made that statement? A. Mr. Kenworthy."

Said witness was present when the tire tracks were investigated at the rear of the Palmer Implement Company store, and was also present at Reno when a comparison was made with the plaster paris casts, and stated, "The casts made of the tracks behind the Palmer Implement Company did compare with the tires on the Kenworthy car." In answer to the question "Was

there any similarity," he answered, "The same tread."

Without further reciting testimony, there is no proof of any kind or nature that corroborates appellant in support of his explanation of his possession of the stolen property. Under such circumstances his explanation of his possession and sale of the stolen property is not acceptable in justification of such possession. 52 C.J.S., Larceny, § 110, p. 934; State v. Davis, supra; State v. Jackett, supra; State v. Smith, supra.

State v. Darrah, 60 Idaho 479, 92 P.2d 143, is not in point, and has no application to the facts in the instant case, which can readily be determined from an examination of the facts, and the law applicable in each case.

Appellant's contention that having given a reasonable account of the circumstances attending his possession of the stolen property removes the inference of guilt and, therefore, the verdict should have been in his favor. Whether the account he gave was true, or false and unreasonable, was for the jury to determine. Particular attention is called to State v. Collett & Ireland, 9 Idaho 608, 75 P. 271. This court cannot disturb the verdict unless we can say that his explanation of his possession was so clearly and evidently true that the opposite conclusion could only be reached by a jury under the influence of passion or prejudice. The jury having found that appellant's explanation of his possession of

the stolen property was not true, and there being sufficient competent evidence to establish that fact, their verdict must be accepted. People v. Luchetti, 119 Cal. 501, 51 P. 707.

The judgment appealed from should be affirmed, and it is so ordered.

GIVENS, C. J., concurs.

HYATT, J., concurs in the result.

HOLDEN, Justice (dissenting).

The Palmer Implement Company operated a store at Preston in Franklin county, Idaho. On or about May 6, 1947, some time between 8:30 p. m., May 6, 1947, and 6:30 a. m., May 7, 1947, the store was entered and merchandise of the value of about $1500 taken. A few days thereafter Dean William Kenworthy and Ralph Thomas Amick were arrested in Nevada and taken to Preston for trial on a charge of grand larceny.

On or about August 5, 1947, an information was filed by the prosecuting attorney of the county, charging Kenworthy and Amick with the crime of grand larceny. They were tried on that charge September 24, 1947, by the court sitting with a jury. The jury found Kenworthy guilty and Amick not guilty. Later and on October 10, 1947, the court entered judgment on the Kenworthy verdict of guilty. From that Judgment Kenworthy appealed to this court.

Appellant Kenworthy points out that during the course of the trial the *state proved* the *explanation* he made of his possession of the recently stolen property, but that the state *failed* to *disprove such explanation*. Hence, that the evidence is insufficient to prove he committed the crime charged against him.

The question thus presented was also presented in State v. Darrah, 60 Idaho 479, 483, 485, 92 P.2d 143, 144. In that case it appears Darrah was in the conscious possession of a watch and case recently taken from the home of a Mrs. A. E. Gemmell; that Darrah, upon being arrested, first explained the watch and case had belonged to his mother and she had given it to him ten years before, but when it was suggested by an officer that he, the officer, could establish that the watch had been sold less than ten years before the burglary, Darrah then offered a second explanation, that "He would tell the truth now, that it was not his mother's watch, that he had bought it out near the viaduct."

In the case at bar, when first arrested, Kenworthy explained his possession of the recently stolen property by saying he bought it, but later changed that explanation to another, saying he got the stolen merchandise, in Los Angeles by trading a Cadillac car for it. In other words, Kenworthy gave two different explanations of his possession of the recently stolen property just as Darrah gave two different explanations. In the Darrah case, supra, this

court, speaking through Mr. Justice Budge, said:

"The serious question presented upon this appeal is the sufficiency of the evidence to prove that appellant committed the crime of burglary. The corpus delicti was proven [as the corpus delicti was proven in the instant case], that is that a burglary had been committed, and it was also proven that appellant was in the conscious possession of recently stolen property [just as it was proven in the case at bar that Kenworthy was in the conscious possession of recently stolen property]. The state voluntarily introduced an alleged statement of appellant in which he stated that the watch and case had belonged to his mother and that she had given it to him ten years before. When it was suggested by an officer that he could establish that the watch had been sold less than ten years ago appellant made the further statement: 'He would tell the truth now, that it was not his mother's watch, that he had bought it out near the viaduct.' "

Continuing, this court pointed out:

"While the state proved the conscious possession by appellant of recently stolen property it also [as in the case at bar] proved the explanation by appellant, that is, that he had purchased the same from a person near the viaduct. There was no evidence showing or tending to show that his statement in this regard was false [also as in the case at bar]. It was neither an impossible or unreasonable explanation of his possession of the recently stolen property. As stated in State v. Pate, supra [43 Idaho 648, 253 P. 623], his contradictory statements may have been prompted 'by a consciousness of wrongdoing.' He may have acquired possession from one who had stolen the property of which fact he became aware upon his apprehension. We are of the opinion that there is not sufficient evidence in the record to connect the defendant with the burglary."

It is also complained the trial court erred in giving instruction No. 6, reading as follows:

"You are instructed that possession of recently stolen property is, in itself evidence from which the jury may find a verdict of guilty on the charge of grand larceny, unless such possession is reasonably and satisfactorily explained so as to indicate such possession to be innocent or lacking a felonious intent to deprive the owner of said property."

The correct rule is "that the possession of recently stolen property, when unexplained (the corpus delicti having been established otherwise than by possession), is a *circumstance* from which guilt may be inferred." State v. Vanek, 59 Idaho 514, 520, 521, 84 P.2d 567, 570, and cases therein cited. The rule is not, as in effect instructed by the court, in the case at bar, "that possession of recently stolen property is, *in itself evidence* from which the jury

may find a verdict of *guilty*" "unless *satisfactorily* explained". (Emphasis added)

In other words, the unexplained possession of recently stolen property merely justifies drawing an *inference* of guilt; it does not prove guilt beyond a reasonable doubt, nor does it in itself justify conviction. Hence, the instruction is both incorrect and confusing.

The judgment of conviction should be reversed and a new trial granted.

I am authorized to say that MILLER, J., concurs in this dissenting opinion.

MILLER, Justice (dissenting).

The record in this case discloses that defendant-appellant was convicted of the crime of grand larceny in the District Court of the Fifth Judicial District of the State of Idaho, in and for Franklin County. An appeal from the judgment of conviction is now before this court.

The charging part of the information is as follows:

"The said Dean William Kenworthy * * * on the 6th day of May, A. D. nineteen hundred and forty-seven at the County of Franklin, in the State of Idaho, did then and there steal, take and carry away from the Palmer Implement Company store in Preston, Idaho, certain saddles and blankets, headstalls, gloves, riding boots, a twenty-two rifle, and a Remington typewriter, the property of the said Palmer Implement Company, and of the value of about Fifteen hundred Dollars. Contrary to the form, force, and effect of the statute in such cases made and provided."

Section 17-3501, I.C.A., defines larceny as follows:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another."

Section 17-3504, I.C.A., is as follows:

"* * * 1. When the property taken is of a value exceeding sixty dollars. * * *"

I incline to the opinion that the information in the foregoing case does not adequately charge the crime of grand larceny. It will be noted that it does not charge in the form of the statute defining larceny, for the reason that there is not included therein that the stealing, taking, carrying, leading, or driving away of the personal property alleged to have been stolen was "feloniously" stolen and, furthermore, that it does not allege that it was stolen with intent to deprive the owner permanently of his property.

In 32 Am.Jur. 121 at page 1033, it is said:

"The corpus delicti in larceny is constituted of two elements: (1) that the property was lost by the owner; and (2) that it was lost by a felonious taking. It is, of course, necessary that the corpus delicti be established, since it is clearly not permissible that anyone be adjudged guilty until

it is shown that a larceny has been committed; and unless the state has shown, prima facie, that a larceny has been committed, the defendant is not put on proof."

To prove the corpus delicti in larceny cases it is necessary to show that the property is taken from the possession of the owner without his consent, and that its removal is with a felonious intent. People v. Siderius, 29 Cal.App.2d 361, 84 P.2d 545.

In 52 C.J.S., Larceny, § 73, p. 865, it is said:

"It has been asserted that an accusation charging larceny as that offense is defined by statute should follow the language of the statute or the code form, and that, where the language of the statute is plain and its meaning well understood from the face of the statute and its previous judicial interpretation, a departure from the statutory language ought not to be practiced; * * *."

In the case of People v. Devine, 95 Cal. 227, 30 P. 378, 379, is cited the case of State v. Homes, 17 Mo. 379, 57 Am.Dec. 269, wherein it is stated that Mr. Freeman said: " 'To constitute the offense of larceny it is absolutely necessary that the taking of the goods be with a felonious intent;' and cites more than a hundred cases in support of that rule. 'We cannot sustain the conviction without confounding the distinction between criminal acts and such as, however reprehensible, involve only a violation of private rights and injuries, for which there is a remedy only by civil action.' McCourt v. People, 64 N. Y. 583." And a quotation from 1 Hale, P. C. 507, says:

" 'Every taking, by one person of the personal property of another, without his consent, is not larceny; and this, although it was taken without right or claim of right, and for the purpose of appropriating it to the use of the taker. Superadded to this, there must have been a felonious intent, for without it there was no crime.' "

And, again a quotation from the case of McCourt v. People, supra, is the following:

" 'One person may take or carry away the property of another of the value of fifty dollars, without being guilty of any offense whatever. But if he does the act feloniously, the statutory crime is committed.' "

And a quotation from People v. Cheong Foon Ark, 61 Cal. 527, says:

" 'It is clear that a charge of larceny, which requires an intent to steal, could not be founded on a mere careless taking away of another's goods.' "

In 52 C.J.S., Larceny, § 27, at page 821, it is said:

"The animus furandi or intent to steal is the intent of the taker to deprive the owner permanently of his property, and it is stated as a broad general rule that such an intent is an indispensable component of larceny, for without it, the taking, although

it may constitute some other crime, cannot be larceny. However, as will be shown infra subdivision b of this section, in a number of cases which purport to apply common-law principles, persons were held guilty of larceny in spite of the fact that it was not the intention of the taker permanently to deprive the owner of his property; and so it has been said that the only rule as to felonious intent in larceny to which all the cases can be reconciled is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it was taken."

In the case of State v. Hurst, 36 Idaho 156, 209 P. 724, 726, a grand larceny case, reversed and remanded, is the following:

"In order to establish, either by pleading or proof, the crime of grand larceny, it must appear that the property belonged to some particular person; that it was taken from him without his consent and against his will, and with a felonious intent to steal it, and deprive the owner permanently of its use. These allegations are material, and must be established beyond a reasonable doubt. Unless so established the evidence is totally insufficient to sustain a verdict of conviction for grand larceny."

In the case of State v. Grimmett, 33 Idaho 203, 193 P. 380, 384, the judgment was reversed and a new trial ordered, is the following:

"This statute in nowise relieves the state of the burden which rests upon it to state in the information or indictment every essential element necessary to constitute the crime of grand larceny in order to state an offense under the laws of this state. Grand larceny is, and can be, committed only of property that belongs to someone. In order to establish either by pleading or proof the crime of grand larceny, it must appear that the property belonged to some particular person; that it was taken from him without his consent and against his will and with a felonious intent to steal it and deprive the owner permanently of its use."

In the case of State v. Bigley, 53 Idaho 636, 26 P.2d 375, 376, prosecution for burglary, it is said:

"Bigley was thus charged with the crime of burglarizing a bank, apparently under, and as claimed by the state, section 25-1110, I.C.A. Defendant contends that such section is unconstitutional because of a defective title. We do not pass on this point, and merely refer to the section to note this: That whether prosecuted under that section or under the general burglary statute, section 17-3401, I.C.A., the information and the statute require, to hold Bigley guilty, that at the time of the offense he have entered, or conspired with his confederates or accomplices to enter, the bank with the intent to commit larceny. One of the essential ingredients is the intent to take away personal property with the intention of permanently depriving the owner thereof. State v. Grimmett, 33 Idaho 203, 215,

193 P. 380; State v. Hurst. 36 Idaho 156, 209 P. 724."

In the case of State v. Rankin. 56 Idaho 64, 50 P.2d 3, 4, conviction of crime of receiving stolen property and reversed, wherein is cited numerous Idaho authorities, there is contained the following:

"Evidence which creates nothing more than a suspicion of guilt, although it be a strong suspicion, is not sufficient to sustain a conviction. 53 C.J. 534; 16 C.J. 1520."

The majority opinion cites and relies on the case of State v. Basinger, 46 Idaho 775, 271 P. 325, as the controlling authority in support of the sufficiency of the charging part of the information, even though the word "felonious" did not constitute a part of the charge. Larceny is defined by Section 17-3501, supra. The Basinger case is taken almost literally from the case of People v. Lopez, 90 Cal. 569, 27 P. 427, a prosecution for the larceny of a horse. All of the statutory provisions of the Penal Code of California incident to the sufficiency of an information, ours being identical or similar, are cited in support of the holding therein that the information was not insufficient because it did not include the word "felonious."

Section 19-1319, I.C.A., among other things says: "No indictment is insufficient * * * by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits."

The "defect or imperfection in matter of form" means the descriptive matter as to the means by and manner in which the charge was accomplished. The law of this state requires (Section 19-1311, I.C.A.) that an information be direct and certain as to the person, the offense and particular circumstances of the offense charged. It also requires that it be direct and certain as to the act or omission (19-1318, I.C.A. subd. 7) charged as the offense and constituting the crime. "In other words, to simply charge that a person committed murder or larceny merely charges the name of the offense. That alone is not sufficient. It is necessary to in some way inform the party accused as to how it is claimed he committed the murder, whether by shooting, by striking a blow, by drowning, poisoning, or in some other manner perpetrating the offense; or, if he committed larceny, what property he took." State v. Smith, 25 Idaho 541, 138 P. 1107, 1108.

The case of State v. McMahan, 57 Idaho 240, 65 P.2d 156, 159, deals extensively with the sufficiency of the charging part of an information, and therein it is said: "It is for the legislature, not the courts, to say what an indictment or an information shall contain (Idaho Constitution, art. 2, § 1). The legislature has said what is required to make an accusation sufficient and the courts are not permitted to say to the contrary."

Accordingly, when it was said in the Lopez case and followed in the Basinger

case, that an information was sufficient, even though the accused was not charged with a "felonious" act, it was a plain violation of Art. 2, sec. 1 of the Constitution, in that the Judicial Department was exercising powers properly belonging to the Legislative Department, and the holding that the word "felonious" was not necessary unmistakably amounted to "judicial repeal." We here mention that the mandate stated in the McMahan case was subsequent to the rendition of the decision in the Basinger case.

"Asportation" as defined by Black's Law Dictionary, Third Edition, is defined as, "The removal of things from one place to another. The carrying away of goods; one of the circumstances requisite to constitute the offense of larceny." The same volume defines "felonious" as, "Malignant; malicious; done with intent to commit a crime; having the grade or quality of a felony. [Citing authorities]. Proceeding from an evil heart or purpose. [Citing authorities]. Wickedly and against the admonition of the law; unlawfully. [Citing authority.] In the law of larceny, 'felonious' is synonymous with fraudulent; [Citing authority] and means done 'animo furandi,' that is, with intent to steal. [Citing authority.] The word "steal" defined by the same volume says, "This term is commonly used in indictments for larceny. ('take, steal, and carry away,') and denotes the commission of theft, that is, the felonious taking and carrying away of the personal property of another, [Citing authorities], or it may denote the criminal taking of personal property either by larceny, embezzlement, or false pretenses. [Citing authority.] But, in popular usage 'stealing' may include the unlawful appropriation of things which are not technically the subject of larceny, e. g., immovables. [Citing authorities.]"

From the foregoing we take it that the word "felonious", is indicative of a state of mind when applied to grand larceny and that the elements thereof are essential to a charge of grand larceny as required by statutory provision and does not exist and cannot be found in the word "steal". The word "steal" as contained in the statutory provision for grand larceny appears to be connected with the element of asportation and not malignant, malicious, done with intent to commit a crime, having the grade or quality of a felony and proceeding from an evil heart or purpose such as are contemplated and contained in the word "felonious."

In the case of In re Bayles, 47 Cal.App. 517, 190 P. 1034, 1035, it is said:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. Section 484, Pen. Code. Every taking by one person of the personal property of another without his consent is not larceny. Felonious intent is of the essence of the crime of larceny."

330

From the foregoing authorities it is made to appear that the information in the instant case does not charge grand larceny, and, regardless of other considerations, the action should be reversed and remanded.

HOLDEN, J., concurs.