69 P.3d 1081

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jason T. ROTH, Defendant–Appellant.**

**No. 27178.**

Court of Appeals of Idaho.

May 5, 2003.

Edward Simon, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

GUTIERREZ, Judge.

Jason T. Roth appeals from his judgment of conviction for driving under the influence, I.C. §§ 18–8004(1)(a) and 18–8004C. Roth argues that the state failed to meet its burden to show the *corpus delicti* of a driving under the influence offense (DUI) independently from its use of Roth's extrajudicial admissions, and that the evidence was insufficient to support a DUI conviction. We affirm.

## I.

## FACTS AND PROCEDURAL HISTORY

On January 15, 2000, at approximately 1:50 p.m., Blaine County Sheriff's Officer Curtis A. Miller received a telephone call from dispatcher Dana Hillman concerning a possible drunk driver. Hillman had received three 911 calls regarding a potential drunk driver in a blue truck. Based on a call by Tamara Thorn, Hillman told Miller the driver was Roth and described the vehicle to Miller. Hillman also told Miller that the callers located the blue truck leaving Hailey, Idaho and possibly heading for the East Fork area. Miller was aware that Thorn was Roth's fianceé prior to his conversation with Hillman.

After speaking with Hillman, Miller patrolled Highway 75 near its intersection with East Fork Road looking for the truck. Between approximately 2:40 p.m. and 2:50 p.m., Miller proceeded to Roth's residence in Triumph, Idaho. Upon arrival at the residence, Miller observed Thorn loading personal items into a green Jeep Cherokee and a blue truck. Miller also observed that the weather had been deteriorating rapidly. It had been snowing for one and one-half to two hours by the time Miller arrived at Roth's residence.

Miller observed approximately five inches of new snow on the ground, and that it was still snowing heavily outside. The blue truck at the residence had approximately one inch of snow cover. Based on the blue truck's light snow cover, Miller concluded that the blue truck had arrived at the residence shortly before his arrival.

Roth was in his residence at the time of Miller's arrival. At Miller's request, Roth came out of the residence. Roth exhibited signs of intoxication, such as physical difficulty and confusion regarding the time of day. Roth stated that he had been home for two hours and that he had not consumed any alcohol since he had been home. Roth indicated that he was in a vehicle when he came home and he pointed to a vehicle, but the record is not clear whether Roth identified the blue truck. Based on the foregoing, Miller formed the opinion that Roth was intoxicated and arrested him for a DUI offense.

During his transportation to the jail, Roth made additional statements. Roth stated that the arrest was his second DUI offense in three years. He stated he had his first beer that day at 8 a.m. He admitted he had been driving that day, first stating he was driving home, then saying he was driving on the Gooding–Wendell highway. He also stated that he had been duck hunting all day and that he drove his truck.

At approximately 3:47 p.m. at the jail, Officer Brad Gelsky administered a breath test on Roth. The test results indicated a 0.26 blood alcohol content.

1. Although Roth states in passing in his brief that he continuously objected to the magistrate's admission of any of the content of the 911 calls as hearsay, including the identification of Thorn as a caller, he does not raise as an issue on appeal any claim of error in an evidentiary ruling. He also has made no substantive argument or provided any authority regarding the admissibility of this evidence. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Thus, we will not consider whether the magistrate properly permitted evidence of the identity of Thorn as a caller.

2. The principle of *corpus delicti* applies to a defendant's extrajudicial admissions, as well as

Roth waived his right to a jury trial. At trial, the magistrate excluded as hearsay evidence much of the information that dispatcher Hillman received from the 911 callers, including the description of the vehicle, the license plate number, Thorn's identification of Roth and the location of the 911 callers.[1] No 911 callers, including Thorn, who identified the blue truck on the road were witnesses at the trial. The magistrate found Roth guilty and entered a judgment of conviction against Roth for DUI. On intermediate appeal, the district court affirmed Roth's judgment of conviction. This appeal ensued.

## II.

### THE STATE ESTABLISHED THE *CORPUS DELICTI* OF A DUI OFFENSE

Roth asserts that insufficient evidence existed to prove the *corpus delicti* of a DUI offense independently from his extrajudicial admissions.[2] *Corpus delicti*, meaning "the body of a crime," is a common law principle that requires the state to establish some evidence that a crime occurred independently from a defendant's confession.[3] *See* BLACK'S LAW DICTIONARY 344 (6th ed.1990). The purpose of *corpus delicti* is to prevent errors in convictions based on false confessions, to act as a safeguard against the defendant's act of confessing but being mistaken that a crime occurred, and to force the prosecution to use its best evidence. *State v. Urie*, 92 Idaho 71, 76, 437 P.2d 24, 29 (1968) (McFadden, J., special concurrence).

to his or her extrajudicial confessions. *State v. Wilson*, 51 Idaho 659, 669, 9 P.2d 497, 500–501 (1932); *State v. Keller*, 8 Idaho 699, 704, 70 P. 1051 (1902). Therefore, our use of the term "confessions" or "confession" in this opinion includes admissions.

3. Some states abandoned the *corpus delicti* rule in favor of the trustworthiness standard established by the United States Supreme Court. *See Smith v. Unites States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Fontenot v. State*, 881 P.2d 69, 77–78 (Okla.Crim. App.1994); *State v. Mauchley*, 67 P.3d 477 (Utah 2003).

To prove a crime generally, the state must provide evidence in the context of three broad elements: (1) that an injury occurred; (2) that criminal agency was involved in causing the injury; and (3) the identity of the person who caused the injury. *See id.* at 75, 437 P.2d at 28 (special concurrence). Under the standard formulations of the *corpus delicti* principle, the state must show the "body" of a crime by establishing the first two elements of a crime, *i.e.*, the injury and the criminal agency, independently from a defendant's confession. *Id.; State v. Darrah*, 60 Idaho 479, 482, 92 P.2d 143, 144 (1939). Thus, the state cannot prove its case by solely using a defendant's confession to establish that a crime occurred. *See Urie*, 92 Idaho at 73, 437 P.2d at 26; *State v. Wilson*, 51 Idaho 659, 669, 9 P.2d 497, 500–501 (1932); *State v. Keller*, 8 Idaho 699, 704–05, 70 P. 1051, 1052 (1902).

In Idaho, the state need not establish independently from the defendant's confession each element of the *corpus delicti*.[4] *Urie*, 92 Idaho at 73, 437 P.2d at 26; *but see*

*State v. Cutler*, 94 Idaho 295, 296–97, 486 P.2d 1008, 1009–10 (1971). Thus, as the *corpus delicti* of the crime consists of injury and criminal agency, the state needs to independently corroborate only one of those elements to meet its burden. Moreover, only slight corroboration of the *corpus delicti* by independent evidence is required.[5] *Id.; Wilson*, 51 Idaho at 669, 9 P.2d at 497; *State v. Downing*, 23 Idaho 540, 544, 130 P. 461 (1913); *Keller*, 8 Idaho at 705, 70 P. at 1052.

Having reviewed the foregoing principles, we now apply Idaho's law of *corpus delicti* to the instant case. The state was required to show slight corroborating evidence of at least one element of the *corpus delicti* of a DUI offense independently from Roth's admissions. In considering the offense of operating a motor vehicle while intoxicated under I.C. § 18-8004(1)(a), the state had to show slight corroborating evidence of the injury, *i.e.*, the potential for injury resulting from an intoxicated driver, or criminal agency, *i.e.*, someone was driving while intoxicated.[6] I.C.

**4.** We note that *Urie's* analysis is based on *State v. Keller*, 8 Idaho 699, 70 P. 1051 (1902), which states: "Full proof of the body of the crime the *corpus delicti* independently of the confessions, is not required by any of the cases; and in many of them, slight corroborating facts were held sufficient." *Keller*, 8 Idaho at 705, 70 P. at 1052. *Keller* can be interpreted as standing for the proposition that the evidence of the body of the crime, *i.e.*, the *corpus delicti*, must only have slight corroboration. In other words, the full *corpus delicti* must be proven with slight corroboration. In contrast, *Urie's* analysis of *Keller* is that not every element of the *corpus delicti* must be proven by the state. As previously discussed, it is accurate that not every *element of a crime* must be shown to satisfy the *corpus delicti* doctrine. However, under classic *corpus delicti* doctrine, both elements of the *corpus delicti* must be shown by the state. The perhaps unfortunate result of *Urie* is that, since the *corpus delicti* of a crime consists of only two elements which need to be proven, the showing of one element meets the *Urie* standard. Thus, under *Urie*, a showing of injury suffices to meet the *corpus delicti* doctrine, although there is no corroboration of criminal agency. This leads to the anomalous result that no criminality needs to be shown, even though the general purpose of the *corpus delicti* doctrine is to show that a crime occurred. However, we are constrained by the holding in *Urie*.

**5.** It may be argued that Idaho cases have been inconsistent regarding the burden the state must meet in establishing *corpus delicti*. Some cases

have used the "slight corroboration" approach in dealing with both direct and circumstantial evidence cases. *See Urie*, 92 Idaho at 73, 437 P.2d at 26; *Wilson*, 51 Idaho at 669, 9 P.2d at 497; *State v. Downing*, 23 Idaho 540, 544, 130 P. 461 (1913); *Keller*, 8 Idaho at 705, 70 P. at 1052. Other cases, however, have held that there is a higher burden of proof in establishing the *corpus delicti* in circumstantial evidence cases. *See Cutler*, 94 Idaho at 297, 486 P.2d at 1010; *State v. Vanek*, 59 Idaho 514, 523, 525, 84 P.2d 567 (1938); *State v. McLennan*, 40 Idaho 286, 301, 231 P. 718, 723 (1925); *State v. Brassfield*, 40 Idaho 203, 213–14, 232 P. 1 (1925); *State v. Sullivan*, 34 Idaho 68, 74–76, 78, 199 P. 647, 650 (1921). As Idaho no longer makes a distinction between direct and circumstantial evidence, we conclude that the evidentiary standard of "slight corroboration" applies in both direct and circumstantial evidence cases. *See State v. Humpherys*, 134 Idaho 657, 660–662, 8 P.3d 652, 655–57 (2000).

**6.** Idaho Code § 18-8004(1)(a) reads in pertinent part, as follows: "It is unlawful for any person who is under the influence of alcohol ... or who has an alcohol concentration of 0.08 ... or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public."

We note that *corpus delicti* was first developed for confessions involving homicides. *Urie*, 92

§ 18–8004(1)(a); *see Darrah,* 60 Idaho at 479, 92 P.2d at 143. In this case, the state has met its burden to show slight corroborating evidence of one element of the *corpus delicti* of a DUI offense—that Roth was driving while intoxicated.

Hillman testified that she received a 911 call from Thorn regarding a potentially intoxicated driver. Hillman relayed this information to Miller. In response to the information received from the dispatcher, Miller went to Roth's residence. There he determined that the blue truck at the residence had been driven recently. He also determined Roth was in an intoxicated condition. This was confirmed by police administering a blood alcohol test on Roth that registered a blood alcohol content level of 0.26, more than three times the legal limit for a DUI.

On these facts, we conclude that the state provided sufficient evidence that Roth was driving while intoxicated, thereby satisfying one element of the *corpus delicti* of a DUI offense. Because only one element of the *corpus delicti* needs to be corroborated, we further conclude the state met its burden to establish the *corpus delicti* of a DUI offense independently from Roth's admissions.

### III.

### THE EVIDENCE WAS SUFFICIENT TO SUSTAIN ROTH'S DUI CONVICTION

▇▇▇▇ Next, we consider Roth's argument that the evidence was insufficient to sustain a DUI conviction. Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito,* 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Knutson,* 121 Idaho 101, 104, 822

P.2d 998, 1001 (Ct.App.1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito,* 131 Idaho at 385, 957 P.2d at 1101; *Knutson,* 121 Idaho at 104, 822 P.2d at 1001.

To establish a DUI offense, the state must prove beyond a reasonable doubt that Roth had a blood alcohol concentration of 0.08 or more, and drove or was in actual physical control of a motor vehicle within Blaine County upon a highway, street or bridge, or upon public or private property open to the public. *See* I.C. § 18–8004(1)(a).

In the instant case, the dispatcher received three 911 calls regarding a potential drunk driver on the road. The dispatcher relayed this information to Miller. In response, Miller went to Roth's residence where he found Roth at his residence in Triumph, located in Blaine County, in an intoxicated condition. A blue truck was parked outside and, based on its snow accumulation, had been driven shortly before Miller's arrival. The only other person at the residence was Thorn, who had been a caller to dispatch an hour earlier to report a potential drunk driver on the road.

In conversations with the police, Roth stated that this was his second DUI in three years. He admitted to drinking as early as 8 a.m. that morning in the Gooding/Wendell area on a duck hunting trip. Roth said he had come home at 3:30 p.m. that day, and pointed to a vehicle at the residence in which he came home. Roth also admitted to driving his truck earlier in the day. He stated that he had not had a drink since he had been home, yet his blood alcohol content was 0.26.

Idaho at 75–76, 437 P.2d at 28–29 (special concurrence). In *State v. Tiffany,* Docket No. 27491, —— Idaho ——, —— P.3d ——, 2003 WL 2012276 (Ct.App. May 5, 2003), issued concurrently with this opinion, we address the *corpus delicti* for involuntary manslaughter, a crime related to

homicide. When dealing with a precisely defined statutory offense which is not related to the principle's origins, however, courts have encountered difficulty in describing the applicable *corpus delicti. See State v. Parker,* 315 N.C. 222, 337 S.E.2d 487, 493–94 (1985).

Roth argues that the state did not provide any evidence of someone who saw Roth driving under the influence. However, Roth overlooks his own admissions that he had been drinking that day, had been driving earlier, and had not had anything to drink since arriving at his house. These admissions, along with the breath test results, are ample evidence to support Roth's conviction.

Roth also argues that the magistrate improperly shifted the burden of proof to Roth by stating that there was no other evidence of how the truck got to Roth's residence except being driven by Roth. However, in reviewing the whole of the magistrate's analysis, the record shows the magistrate was merely making permissible inferences from the state's evidence, not shifting the burden to Roth. In the absence of a satisfactory explanation by the defense as to the facts and circumstances raised by the state, the state raised the inference that Roth committed the offense. *See State v. Kenworthy,* 68 Idaho 312, 317, 193 P.2d 838, 841 (1948); *State v. Gilbert,* 65 Idaho 210, 219, 142 P.2d 584, 587 (1943). The burden of proof was not shifted to Roth. Rather, Roth never presented any explanation of how else the truck arrived at the residence to overcome this inference of guilt. *See Kenworthy,* 68 Idaho at 317, 193 P.2d at 841.

Thus, we conclude that the state provided sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that Roth was guilty of a DUI offense.

## IV.

## CONCLUSION

We conclude the state met its burden to show the *corpus delicti* of a DUI offense. Additionally, we conclude the state provided sufficient evidence for the magistrate to find beyond a reasonable doubt that Roth had committed a DUI offense. Accordingly, we affirm the district court's decision affirming the magistrate's judgment of conviction of Roth for driving under the influence.

Chief Judge LANSING and Judge PERRY concur.