**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37139**

| | |
|---|---|
| STATE OF IDAHO, ) | **2011 Opinion No. 46** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: August 3, 2011** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| ANICETO BETANCOURT, IV, ) | |
| ) | |
| Defendant-Appellant. ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Dennis E. Goff and Bradly S. Ford, District Judges.

Judgment of conviction for possession of a controlled substance, <u>vacated</u> <u>and</u> <u>remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Aniceto Betancourt, IV, appeals from his judgment of conviction for possession of a controlled substance. For the reasons set forth below, we vacate the judgment of conviction and remand for a new trial.

**I.**

**FACTS AND PROCEDURE**

Betancourt was stopped by an officer for failure to display a front license plate. Upon approaching the vehicle, the officer asked Betancourt where he was driving and where he had been prior to the stop. Betancourt responded that he had been sleeping in the passenger's seat of the vehicle when he heard gun shots, jumped into the driver's seat, and drove away. Betancourt also admitted to carrying a concealed weapon for which he had a permit. The officer asked permission to retrieve the weapon from the vehicle and Betancourt declined. The officer noticed a strong odor of alcohol on Betancourt's breath and placed him under arrest on suspicion of

1

driving under the influence. An inventory search of the vehicle after Betancourt's arrest revealed methamphetamine under the floor mat of the passenger's seat. Officers took a sample of Betancourt's blood, which later tested positive for methamphetamine.

Betancourt was charged with driving under the influence, I.C. § 18-8004; carrying a concealed weapon while under the influence of alcohol or drugs, I.C. § 18-3302B; and possession of a controlled substance, I.C. § 37-2732(c)(1). Betancourt pled guilty to driving under the influence and carrying a concealed weapon while under the influence. Prior to trial on the remaining charge, Betancourt filed a motion in limine. Betancourt argued that testimony regarding the results of his positive blood test for methamphetamine should not be presented to the jury because the test was not relevant and, if relevant, would be prejudicial and confuse the jury. Further, Betancourt also asserted, by way of a motion on the morning of trial, that a redacted video of the traffic stop was irrelevant and prejudicial. The district court held that both the blood test results and the video were admissible. During trial, the officer testified that, after initially cooperating with the officer and answering questions, Betancourt refused to answer any further questions without a lawyer present. On the following day, trial counsel filed a motion for a mistrial in response to the officer's statements regarding Betancourt's refusal to answer questions. The district court denied the motion. Finally, during closing arguments, the prosecutor asked the jury to pay close attention to Betancourt's demeanor during the video and to note that Betancourt did not want the officer to search the vehicle. The jury found Betancourt guilty of possession of a controlled substance. Betancourt appeals.

## II.

## ANALYSIS

Betancourt raises six issues on appeal. First, he argues that the district court erred by admitting the redacted video of his traffic stop.[1] Second, he asserts that the district court erred by admitting testimony regarding the results of Betancourt's positive blood test for methamphetamine. Third, he contends that there was insufficient evidence to support the jury's guilty verdict. Fourth, he argues that the testimony regarding his refusal to answer further

---

[1] Prior to trial, the district court viewed the video and ordered that portions of Betancourt's encounter with police be redacted because such portions were either irrelevant or that their probative value was outweighed by unfair prejudice. On appeal, Betancourt challenges all portions of the video shown to the jury at trial.

2

questions violated his constitutional rights. Fifth, he argues that the state's comments during closing argument regarding Betancourt's refusal to allow officers to search the vehicle constituted prosecutorial misconduct. Finally, Betancourt contends that, even if this Court concludes that the asserted errors are harmless, the cumulative effect of the errors should result in the vacation of his judgment of conviction for possession of a controlled substance.

## A. Evidentiary Issues

First, we address Betancourt's argument that the district court erred by allowing the jury to view a redacted video of his traffic stop and by admitting the results of his positive blood test for methamphetamine.

### 1. Video of the traffic stop

The district court determined that the redacted video of the traffic stop was probative of Betancourt's knowledge of and intent to possess the methamphetamine found in the vehicle. The video begins with the officer's questioning of Betancourt regarding the vehicle's missing front license plate, Betancourt's whereabouts prior to the stop, and whether Betancourt had any weapons in the vehicle. During this questioning, Betancourt admits to the officer that he had been sleeping in the passenger's seat of the vehicle when he heard gunshots and then jumped into the driver's seat in order to flee from the area where shots were fired. Later in the video, Betancourt states that he rode with the driver in the car from Betancourt's house in Boise to Caldwell, fell asleep in the passenger's seat, and only drove the vehicle once the driver exited the car and Betancourt heard gunshots. Betancourt elaborates with more and more details of his story as the officer continues to question him.

These portions of the redacted video are relevant. First, they demonstrate that Betancourt was in the particular area in the vehicle where the methamphetamine was found. Further, the portions of the video depicting Betancourt's elaborate and convoluted explanation for his previous whereabouts are also relevant to demonstrate his consciousness of guilt. Thus, Betancourt's behavior on the redacted video has the tendency to make Betancourt's knowledge of the drugs in the vehicle more probable. *See* I.R.E. 401; *State v. Hocker*, 115 Idaho 544, 547, 768 P.2d 807, 810 (Ct. App. 1989).

However, as we will explain in more detail below with reference to the prosecutor's closing statements, the use of the portions of the video depicting Betancourt's refusal to consent to a search of the vehicle was improper. While other portions of the video were relevant to

establish Betancourt's proximity to the methamphetamine and his consciousness of guilt, the use of Betancourt's refusal to allow the officer to search the vehicle was inadmissible.

### 2. Blood test evidence

Next, we turn to Betancourt's argument that the blood test evidence was irrelevant and prejudicial under I.R.E. 403(b). The district court held that the blood test evidence was relevant to demonstrate constructive possession because it established Betancourt's knowledge of the methamphetamine discovered in the passenger's compartment of the vehicle. We agree. *See State v. Williams*, 134 Idaho 590, 592-93 6 P.3d 840, 842-43 (Ct. App. 2000) (holding that evidence of prior methamphetamine use was relevant to the question of defendant's intent to use drug paraphernalia to inject methamphetamine). Evidence of the presence of methamphetamine in Betancourt's blood, alone, does not demonstrate his knowledge of the drug in the vehicle beyond a reasonable doubt. However, the blood test evidence makes Betancourt's knowledge of the methamphetamine more likely. Therefore, testimony regarding the results of Betancourt's blood test was relevant to Betancourt's knowledge of methamphetamine. The determination as to whether the blood test's probative value is outweighed by unfair prejudice is left to the discretion of the district court.

### B. Sufficiency of the Evidence

Betancourt contends that there was insufficient evidence to support the jury's guilty verdict. Therefore, we must consider whether there was sufficient evidence to support the jury's finding of guilt. *See State v. Moore*, 148 Idaho 887, 893-94, 231 P.3d 532, 538-39 (Ct. App. 2010). Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

In order to convict a defendant of possession of a controlled substance, the state does not have to establish actual physical possession of the substance, but need only prove that the defendant had such dominion and control over the substance to establish constructive possession. *State v. Segovia,* 93 Idaho 594, 598, 468 P.2d 660, 664 (1970). What is crucial to the state's proof is a sufficient showing of a nexus between the accused and the controlled substance. *State v. Fairchild,* 121 Idaho 960, 969, 829 P.2d 550, 559 (Ct. App. 1992). Knowledge of the existence of controlled substances may be inferred through circumstances. *State v. Clayton,* 101 Idaho 15, 16, 607 P.2d 1069, 1070 (1980).

The state presented evidence that Betancourt was the only occupant of the vehicle at the time of the traffic stop, had recently been sleeping and riding in the passenger's compartment where the methamphetamine was found, appeared nervous during his encounter with the officer, provided a confusing and incredible explanation for his whereabouts prior to the stop, and failed a blood test for methamphetamine. Viewing all of the evidence presented at trial in a light most favorable to the state, we conclude that there was sufficient evidence for a reasonable jury to find a nexus between Betancourt and the methamphetamine found in the vehicle to support a finding of constructive possession. The circumstances surrounding the stop, along with Betancourt's behavior and evidence that he was in exclusive control of the vehicle, supported the jury's finding that Betancourt had knowledge, dominion, and control over the methamphetamine in the vehicle. Thus, there was substantial evidence upon which a reasonable jury could have found that the state sustained its burden of proving the essential elements of possession of a controlled substance beyond a reasonable doubt.

## C.     Prosecutorial Misconduct

Betancourt contends that the prosecutor impermissibly commented on the exercise of Betancourt's Fourth Amendment right to be free from unreasonable searches and seizures. As demonstrated by the redacted video shown to the jury at trial, Betancourt declined the officer's request to retrieve Betancourt's weapon from the vehicle, stating that he was not going to consent to a search and that he wanted to protect his civil rights. On appeal, Betancourt asserts that the state made the following impermissible comments regarding this refusal during closing argument:

> But there's more. Watch the video. You saw his demeanor on the video. *He did not want those troopers to search that vehicle*. His story is incredible. It doesn't make any sense. It changes. All that you can consider.

(emphasis added).  In addition, during rebuttal to Betancourt's closing argument, the prosecutor also stated:

> But this case, the evidence you have heard is a lot more than mere proximity.  Listen to the video, watch his demeanor.  *It speaks volumes about his concern about these troopers not getting into that car.  He's trying to lead them astray and keep them out of that vehicle*.  That's clear.

(emphasis added).  There was no contemporaneous objection to either of these comments.  Betancourt asserts that these comments urged the jury to infer his guilt from the invocation of his Fourth Amendment right to refuse to consent to the search of the vehicle.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair.  *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).  However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial.  *Id.* A fair trial is not necessarily a perfect trial.  *Id.*  Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case.  *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007).  Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence.  *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991).  Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom.  *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct.  If the alleged misconduct was not followed by a contemporaneous objection, as in this case, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings.  *Id.* at 226, 245 P.3d at 978.

The Idaho Supreme Court addressed an instance of prosecutorial misconduct similar to the comments made by the prosecutor in this case in *State v. Christiansen*, 144 Idaho 463, 163

6

P.3d 1175 (2007). There, the Court held that the prosecutor's questioning of an officer regarding Christiansen's refusal to consent to a search of his business constituted fundamental error. *Id*. at 470-71, 163 P.3d at 1182-83. The Court held that the same rationale for excluding evidence of an accused's invocation of his or her Fifth Amendment rights applied to the invocation of a defendant's Fourth Amendment rights. *Id*. at 470, 163 P.3d at 1182. Specifically, the Court relied on prior United States Supreme Court and Idaho Supreme Court cases for the proposition that reference to a defendant's invocation of a constitutional right deprives an accused of his or her constitutional right to due process and a fair trial. *Id*.; *see also Griffin v. California*, 380 U.S. 609, 615 (1965); *State v. White*, 97 Idaho 708, 715, 551 P.2d 1344, 1351 (1976).

*Christiansen* was decided prior to *Perry* and, as such, the *Perry* fundamental error analysis was not applied to the facts in *Christiansen*. However, the reasoning in *Christiansen* that a prosecutor's use of a defendant's invocation of his or her Fourth Amendment right is analogous to the impermissible use of a defendant's invocation of his or her Fifth Amendment rights, applies to the first prong of the *Perry* analysis in this case--whether the error complained of violates one or more of the defendant's unwaived constitutional rights. Other jurisdictions have addressed this issue and have also concluded that a prosecutor's reference to a defendant's refusal to consent to search constitutes a violation of the defendant's right to a fair trial. *See United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978) (stating that, "if the government could use such a refusal against the citizen, an unfair and impermissible burden would be placed upon the assertion of a constitutional right"); *Padgett v. State*, 590 P.2d 432, 434-35 (Alaska 1979) (the constitutional right to refuse to consent to a search would effectively be destroyed if the exercise of such a right could be used as evidence of guilt); *State v. Palenkas*, 933 P.2d 1269, 1280 (Ariz. Ct. App. 1996) (invocation of a constitutional right is probative of nothing other than the defendant's awareness of his or her constitutional rights). Based on the reasoning of the Idaho Supreme Court and the other above-listed authorities, we conclude that Betancourt has established the first prong of *Perry* because the prosecutor's comments during closing argument and rebuttal violated Betancourt's constitutional right to a fair trial.[2]

The state asserts that Betancourt has failed to demonstrate the second prong of the fundamental error test because the error is not clear from a review of the record. Specifically,

---

[2] Based upon the same reasoning, the portion of the video which Betancourt refused to consent to a search was inadmissible.

the state argues that the prosecutor's comments are ambiguous, at best, and could not be considered to be plain error. However, the prosecutor's statement that Betancourt "did not want those troopers to search that vehicle" is clearly a comment on Betancourt's statements in the video refusing to consent to a search. Similarly, the prosecutor's statements during rebuttal also refer to Betancourt's concern about keeping the officers out of the vehicle. While the prosecutor focused on Betancourt's overall demeanor during the stop, it is plain from a review of the record that the prosecutor also requested that the jury pay particular attention to Betancourt's refusal to allow the search as evidence of his knowledge of methamphetamine in the car. Therefore, the second prong of *Perry* has also been established.

Under the third prong of *Perry*, in order to conclude that the prosecutor's comments constituted fundamental error, the defendant must demonstrate that there is a reasonable possibility that the impermissible comments affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978. As mentioned above, in order to prove possession of a controlled substance, the state must prove that the defendant has such dominion and control over the substance to establish constructive possession. *Segovia,* 93 Idaho at 598, 468 P.2d at 664. A sufficient showing of a nexus between the accused and the controlled substance is central to this requirement. *Fairchild,* 121 Idaho at 969, 829 P.2d at 559. Further, knowledge of the existence of controlled substances may be inferred through circumstances. *Clayton,* 101 Idaho at 16, 607 P.2d at 1070.

The state's evidence of a nexus between Betancourt and the methamphetamine found under the floor mat in the vehicle consisted of his admission to sleeping in the passenger's seat prior to the stop, a positive blood test for methamphetamine, his admission to being the last person to drive the car prior to the search, and his unusual and evasive behavior during the traffic stop. The officer did not testify that Betancourt appeared to be under the influence of methamphetamine and did not question Betancourt about controlled substances during the stop. Indeed, the methamphetamine was discovered in the vehicle during a subsequent inventory search, not during the stop itself. The pivotal issue in this case was Betancourt's knowledge of the methamphetamine. Perhaps the state's strongest evidence of Betancourt's knowledge was his refusal to allow the officer to search the vehicle. As a result, we cannot conclude beyond a reasonable doubt that the prosecutor's impermissible comments regarding Betancourt's

8

invocation of his Fourth Amendment rights did not contribute to the jury's verdict.  Accordingly, we vacate Betancourt's judgment of conviction for possession of a controlled substance.[3]

### III.

### CONCLUSION

The admissible evidence introduced by the state was sufficient to support the jury's finding of guilty.  However, the prosecutor's improper comment during closing argument regarding Betancourt's refusal to consent to a search of the vehicle constituted fundamental error.  Accordingly, we vacate Betancourt's judgment of conviction and remand for a new trial.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**

---

[3] Concerning Betancourt's remaining arguments on appeal, the state concedes that the officer should not have testified about Betancourt's refusal to answer questions prior to his arrest.  Because we are vacating Betancourt's judgment of conviction on other grounds, we need not address the state's contention that the officer's testimony regarding Betancourt's refusal to answer questions constituted harmless error.  For this reason, we also decline to address Betancourt's cumulative error argument.