**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38123**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Opinion No. 16** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 24, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **TIMOTHY NICHOLS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for statutory rape, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Chief Judge

Timothy Nichols appeals from his judgment of conviction entered upon a jury verdict finding him guilty of statutory rape. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In August 2009, the Mountain Home Police Department received a tip that a juvenile runaway from Washington may be at Nichols' residence. Officer Humberto Fuentes was dispatched to the residence, where he found Nichols and the victim, a teenage girl, sitting under a tree in the front yard. The victim was visibly "extremely upset." After speaking with Nichols and the victim and contacting the Everett (Washington) Police Department, where the runaway report had been filed, Officer Fuentes took the victim into custody. Based on the officer's subsequent interview of her, the case was turned over to Detective Ty Larsen for further investigation. Specifically, Officer Fuentes indicated in his report to Detective Larsen "that he

1

had located a runaway in the City of Mountain Home, and there had been possible other illegal contacts involving with [sic] her."

Detective Larsen interviewed Nichols several days later. Nichols provided identification, which indicated he was fifty-five years old. After waiving his *Miranda*[1] rights, Nichols told Detective Larsen he met the victim in Everett, Washington, and the two moved to Idaho together approximately one month prior. Nichols admitted that he and the victim were in a "dating relationship;" that they shared a room together in their two-bedroom apartment; and that since living in Idaho, they engaged in sexual intercourse approximately two to three times a week.

Nichols was charged with statutory rape, Idaho Code § 18-6101(1).[2] At the time of trial, the victim was unavailable as a witness, as her whereabouts were unknown. The victim's adoptive mother testified as to the victim's birthdate, indicating the victim was seventeen years old at the time she was living with Nichols. At the conclusion of the State's case-in-chief, Nichols moved for a judgment of acquittal, contending the State failed to present any evidence independent of Nichols' confession to establish the *corpus delicti* of the crime. Specifically, Nichols contended there was no other evidence to corroborate his admission to having engaged in sexual intercourse with the victim. The district court denied the motion, and the jury found Nichols guilty as charged. Nichols timely appealed from the judgment of conviction.

Following the filing of its respondent's brief in this appeal, the State filed a motion to stay the proceedings until the issuance of a remittitur in a case then pending before the Idaho Supreme Court, *State v. Suriner*, 154 Idaho 81, 294 P.3d 1093 (2013), where a key issue raised was the continued viability of the *corpus delicti* rule in Idaho. Nichols did not oppose the motion to stay, which was granted. After the Supreme Court issued its decision in *Suriner*, which eliminated the *corpus delicti* requirement in Idaho, appellate proceedings resumed, and Nichols filed a reply brief, arguing in part that *Suriner's* abolition of the rule should not apply retroactively.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     The statute was subsequently amended in 2010.

## II.

## ANALYSIS

Nichols contends the district court erred by denying his motion for a judgment of acquittal because there was insufficient evidence to corroborate his confession pursuant to the *corpus delicti* rule. He also argues the district court erred by permitting the victim's adoptive mother to testify as to the victim's age and in allowing Officer Fuentes to testify that the victim was a runaway because the testimony constituted inadmissible hearsay. Nichols further contends the district court committed fundamental error by giving the jury an improper elements instruction and by failing to sua sponte instruct the jury as to the *corpus delicti* rule. Finally, he contends the prosecutor committed misconduct amounting to fundamental error during closing arguments by misstating testimony and referring to facts not in evidence.

### A. Judgment of Acquittal

Nichols contends the district court erred by denying his motion for a judgment of acquittal following the State's evidence because, he asserts, the State presented insufficient evidence to establish the *corpus delicti* of the charged offense independent of Nichols' confessions and statements.[3] Specifically, he contends there was no evidence aside from his "alleged" confession that indicated any sexual intercourse occurred between Nichols and the victim.

On review of the denial of a motion for judgment of acquittal, we determine whether there is substantial evidence to support the challenged conviction. *State v. Hoyle*, 140 Idaho 679, 683-84, 99 P.3d 1069, 1073-74 (2004); *State v. Merwin*, 131 Idaho 642, 644, 962 P.2d 1026, 1028 (1998). Substantial evidence to support the challenged conviction is present when a reasonable mind could conclude that the defendant's guilt of the offense was proven beyond a reasonable doubt by such material evidence. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *State v. Kuzmichev*, 132 Idaho 536, 545, 976 P.2d 462, 471 (1999). Where there is competent although conflicting evidence to sustain the verdict, this Court cannot reweigh that evidence or disturb the verdict. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *Merwin*, 131 Idaho at 644-45, 962 P.2d at

---

[3]     In response to *State v. Suriner*, 154 Idaho 81, 294 P.3d 1093 (2013), Nichols argues the Supreme Court's abolition of the *corpus delicti* rule should not apply retroactively in this case. We need not reach the issue of retroactivity, however, because as we explain below, the *corpus delicti* rule was satisfied in this instance.

3

1028-29. In reviewing a motion for judgment of acquittal, all reasonable inferences on appeal are taken in favor of the prosecution. *Hoyle*, 140 Idaho at 684, 99 P.3d at 1074; *Kuzmichev*, 132 Idaho at 545, 976 P.2d at 471.

The *corpus delicti* rule provides that the fact a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner, and there must be some evidence or corroborating circumstances tending to show a crime has been committed, aside from such confessions or statements. *Suriner*, 154 Idaho at 83, 294 P.3d at 1095 (quoting *State v. Keller*, 8 Idaho 699, 704, 70 P. 1051, 1052 (1902)). The purpose of *corpus delicti* is to prevent errors in convictions based on false confessions, to act as a safeguard against the defendant's act of confessing but being mistaken that a crime occurred, and to force the prosecution to use its best evidence. *State v. Urie*, 92 Idaho 71, 76, 437 P.2d 24, 29 (1968) (McFadden, J., special concurrence). *See also State v. Roth*, 138 Idaho 820, 822, 69 P.3d 1081, 1083 (Ct. App. 2003).

To prove a crime generally, the state must provide evidence in the context of three broad elements: (1) an injury occurred; (2) criminal agency was involved in causing the injury; and (3) the identity of the person who caused the injury. *See Urie*, 92 Idaho at 75, 437 P.2d at 28 (special concurrence). *See also Roth*, 138 Idaho at 823, 69 P.3d at 1084. Under the standard formulations of the *corpus delicti* principle, the state must show the "body" of a crime by establishing the first two elements of a crime--*i.e.*, the injury and the criminal agency--independently from a defendant's confession. *Roth*, 138 Idaho at 823, 69 P.3d at 1084 (citing *State v. Darrah*, 60 Idaho 479, 482, 92 P.2d 143, 144 (1939)). However, when the *corpus delicti* rule was in effect in Idaho, the State did not have to establish independently from the defendant's confession each element of the *corpus delicti*. *Urie*, 92 Idaho at 73, 437 P.2d at 26; *Roth*, 138 Idaho at 823, 69 P.3d at 1084. Thus, as the *corpus delicti* of the crime consisted of injury and criminal agency, the State needed only to independently corroborate one of those elements to meet its burden. *Roth*, 138 Idaho at 823, 69 P.3d at 1084. Moreover, only slight corroboration of the *corpus delicti* by independent evidence was required. *Urie*, 92 Idaho at 73, 437 P.2d at 26; *State v. Wilson*, 51 Idaho 659, 669, 9 P.2d 497, 500 (1932); *State v. Downing*, 23 Idaho 540, 544, 130 P. 461, 462 (1913); *Keller*, 8 Idaho at 705, 70 P. at 1052.

Here, Nichols was charged pursuant to Idaho Code § 18-6101(1), which, at the time of the offense, defined statutory rape as "the penetration, however slight, of the oral, anal or vaginal opening with the perpetrator's penis accomplished with a female . . . [w]here the female is under

4

the age of eighteen (18) years." Nichols argued below, and continues to argue on appeal, that there was "absolutely no corroboration" of his confession that he engaged in sexual intercourse with the victim and thus the *corpus delicti* rule was violated. He points out there was no forensic or medical examination of the victim presented as evidence to the jury and law enforcement officers had not been able to verify the victim and Nichols were, in fact, living together. The district court rejected this argument, first noting the *corpus delicti* rule in Idaho does not require "that there be corroboration of each and every element or each and every statement made by the defendant." The court also rejected Nichols' argument that the State was required to present direct evidence (independent of Nichols' confessions) that sexual intercourse occurred. The court determined that the existence of a relationship between the two was corroborated, and the jury could infer from the evidence that the relationship was illicit.

We agree with the district court that direct evidence of sexual intercourse was not necessary in this case. Although direct corroborative evidence of sexual intercourse would satisfy the requirements of the *corpus delicti* rule in a statutory rape case, such evidence is not necessary. In *State v. Richardson*, 56 Idaho 150, 50 P.2d 1012 (1935), our Supreme Court addressed the requisite corroborative evidence to establish the *corpus delicti* of adultery. The court determined that in such cases "the *corpus delicti* may be established by circumstantial evidence, and that direct evidence of the fact of intercourse is not required, but may be inferred from circumstances that lead to it by fair inference as a necessary conclusion." *Id*. at 154, 50 P.2d at 1013.

In determining whether there was sufficient corroborating evidence in this case, we are guided by *Suriner* where, before ultimately abolishing the *corpus delicti* rule, the Supreme Court undertook an examination of how the Court had interpreted and applied the rule in Idaho in order to determine whether the district court erred by finding there had been sufficient corroborating evidence of Suriner's confessions. *Suriner*, 154 Idaho at 83-85, 294 P.3d at 1095-97. In doing so, the *Suriner* Court focused on the key Idaho Supreme Court decisions applying the rule, starting with *Keller*, 8 Idaho 699, 70 P. 1051, in which the Supreme Court first adopted the rule in Idaho. In *Keller*, the defendant was convicted of violating a quarantine signed by the governor by bringing sheep through Box Elder County, Utah, into Idaho. The sole evidence presented at trial was the governor's quarantine proclamation and a witness's testimony that after the quarantine was instituted, the witness went with the defendant to the defendant's sheep camp and

5

the defendant told him that two or three days earlier he had driven the sheep into Idaho through Box Elder County. At trial and on appeal, the defendant contended there was insufficient evidence corroborating his out-of-court statement of having violated the quarantine. The *Keller* Court held that only slight corroborating facts were required and there was sufficient corroborating evidence present in the case. *Id*. at 704, 70 P. at 1052.

In analyzing *Keller*, the *Suriner* Court pointed out that the only evidence corroborating the defendant's out-of-court statement was the witness's testimony that he had seen the defendant's sheep in Idaho after the quarantine commenced. *Suriner*, 154 Idaho at 84, 294 P.3d at 1096. The *Suriner* Court continued:

> Although the defendant having the sheep in Idaho was a fact that the State was required to prove, it was not a crime for the defendant to have had sheep in Idaho on that date. It was only a crime to have brought them through Box Elder County within forty days after the Governor's proclamation. The witness's observation of the sheep in Idaho would not in any way corroborate the truthfulness of the defendant's statement that he had brought those sheep through Box Elder County within the last two or three days. Thus, there was no corroboration of that portion of the defendant's statement that made having the sheep in Idaho criminal . . . . Nevertheless, this Court held that the corroboration was sufficient.

*Id*.

The *Suriner* Court next discussed its decision in *Urie*, 92 Idaho 71, 437 P.2d 24, where the defendant conspired with a man named Fraley to obtain money from an insurance company for serious injuries Fraley falsely claimed to have suffered on the premises of the defendant's employer. When the defendant did not receive his promised share of the settlement Fraley had received, the defendant went to his employer's counsel and confessed the scheme. His statement was reduced to writing and approximately three months later he signed the statement and reiterated his confession to counsel and representatives of the insurance company. The defendant was convicted of obtaining money under false pretenses and he appealed, contending, among other things, that there was insufficient corroboration of his extrajudicial confessions. In rejecting this claim, the Supreme Court pointed to medical testimony that Fraley had not suffered the serious injury claimed, as well as the defendant's "course of conduct" from the time of the alleged injury to the signing of the confession that lent "credibility" to his statement. *Id*. at 73-74, 437 P.2d at 26-27. The course of conduct relied upon by the Court included that Urie "voluntarily made statements admitting the fraudulent scheme before counsel . . . which he

6

subsequently reiterated with further particularity and exactitude before two other agents of the insurance company at the time he signed his 'confession.'" *Id*. at 74, 437 P.2d at 27.[4]  As the *Suriner* Court pointed out, in this manner the *Urie* Court "stated that extrajudicial statements that were consistent with the signed confession could be used to corroborate that confession." *Suriner*, 154 Idaho at 85, 294 P.3d at 1097.[5]

Finally, the *Suriner* Court addressed its decision in *State v. Tiffany*, 139 Idaho 909, 88 P.3d 728 (2004).  There, the defendant's two-month-old son died while allegedly taking a nap and the autopsy performed the next day did not reveal any cause of death.  Almost a year later, the defendant admitted to her husband and a counselor that she had smothered her son in an attempt to stop his crying.  The counselor contacted the police, who came to the counselor's office where the defendant again admitted she had smothered the child.  The defendant was convicted of involuntary manslaughter.  On appeal, the defendant contended there was insufficient evidence corroborating her out-of-court confessions.  Noting that only slight corroborating facts were necessary, the Supreme Court held there was sufficient corroboration because the defendant's extrajudicial statements were corroborated by the fact the child was dead, he died while under the exclusive care of the defendant, and her statements about how she killed him were consistent with the autopsy results.  *Id*. at 915, 88 P.3d at 734.  The *Suriner* Court noted there was no corroboration of the element of the crime that the child's death was caused by criminal means because the pathologist could not tell whether the child died from smothering or sudden infant death syndrome.  The *Suriner* Court further noted that the *Tiffany* Court held corroboration could include the results of a medical examination of the victim

---

[4]     The *Urie* Court then noted, "[A] crime of this particular nature would be difficult, if not well impossible, to prove with any degree of certainty in the absence of a confession on the part of one or both parties involved."  *Urie*, 92 Idaho at 74, 437 P.2d at 27.

[5]     The *Suriner* Court also noted, in a preview of its forthcoming holding abolishing the rule:

> Although it may seem inconsistent with the *corpus delicti* rule to permit a defendant's extrajudicial statements to corroborate his extrajudicial confession, the rule is court created.  Each court has defined and applied the rule as the court deemed best.  As will be discussed below, the rule as adopted and applied by this Court has not been designed to protect any constitutional or statutory rights or even to prevent convictions based upon false confessions.

*Suriner*, 154 Idaho at 85, 294 P.3d at 1097.

consistent with the defendant's extrajudicial statements. *Suriner*, 154 Idaho at 85-86, 294 P.3d at 1097-98.

The facts of *Suriner* itself are as follows: Suriner had twin daughters who were about three and a half years old at the time of the alleged criminal conduct. One daughter mentioned to an aunt that Suriner had hurt her vaginal area. Police were contacted and Suriner eventually confessed, over the course of two separate interviews, that he had been sexually abusing his daughters on Sundays while his wife was at work. Suriner was charged with two counts of lewd conduct. At trial, the State offered into evidence Suriner's taped confessions and recordings of remorseful phone calls he made from jail. A pediatrician who conducted a physical examination of the girls testified he did not find any trauma or injury associated with sexual abuse, but also stated the lack of such evidence is not usual. Suriner's wife testified Suriner had been alone with the girls on Sundays while she was at work. After the State rested, Suriner moved for a judgment of acquittal on the ground that the State had not produced evidence a crime had occurred independently from Suriner's confessions. The district court denied the motion, relying on the facts that: (1) Suriner had confessed twice, several days apart; (2) the confessions were videotaped, allowing the jury to assess whether there were any pressures that might cause a false confession; (3) Suriner initiated telephone calls from the jail in which he made incriminating statements; and (4) the pediatrician's examination of the victims could not rule out sexual abuse. *Id*. at 83, 294 P.3d at 1095. Suriner presented no evidence, and a jury found him guilty as charged. After reviewing the three cases discussed above, the Supreme Court relied on *Urie's* holding that corroboration can include the defendant's other extrajudicial statements and *Tiffany's* holding that corroboration could include the results of a medical examination of the victim consistent with the defendant's extrajudicial statement to conclude the district court did not err in holding there was sufficient corroboration of Suriner's confessions. *Suriner*, 154 Idaho at 85-86, 294 P.3d at 1097-98.

Relying on the cases above, which make clear that the amount of corroborating evidence required is very slight, we are convinced the district court was correct in determining there was sufficient corroborating evidence in this case to satisfy the erstwhile *corpus delicti* rule. As the *Suriner* Court noted, the *Keller* Court did not require corroboration of the portion of the defendant's statement making his acts *criminal*; rather, only slight evidence corroborating the general statement was held sufficient. *Suriner*, 154 Idaho at 84, 294 P.3d at 1096. Here, there

8

was evidence presented at trial indicating a relationship between Nichols and the victim, which corroborated, in a general sense, Nichols' confession that the two had moved together from Washington, were living together, and were engaged in a sexual relationship. Officers received a tip about a possible juvenile runaway at Nichols' residence and when Officer Fuentes arrived at the residence, he found the victim and Nichols together in the front yard. Further, the victim's mother testified she contacted the Everett (Washington) Police Department and reported the victim as a runaway in July 2009, roughly coinciding with the date Nichols stated he and the victim moved to Idaho together. The victim's mother also testified she received a call from the victim before the victim was taken into custody, which was placed using Nichols' cell phone. The victim indicated she was calling from "a place where she was with [Nichols]." Finally, Nichols was in his mid-fifties and the victim was only seventeen years old. This is not absolute proof of an inappropriate relationship, but is relevant to the issue. Additionally, like in *Urie* and *Suriner*, Nichols' made extrajudicial statements consistent with his confession to police. The victim's mother received several calls from Nichols on the night the victim was taken into custody, during which Nichols expressed concern for the victim's welfare and said he had "taken care of" the victim. Pursuant to *Urie* and *Suriner*, Nichols' statements may be considered in concert with the other evidence listed above.

Admittedly, the evidence, even when considered together, amounts to a somewhat tenuous corroboration of Nichols' confessions. However, the *Suriner* Court made clear that even before its abolition, the *corpus delicti* requirement in Idaho was slight and allowed for, among other things, usage of the defendant's extrajudicial statements to corroborate his confession. Given this low bar articulated in *Suriner*, the evidence in this case leads to a fair inference that Nichols and the victim were involved in some sort of illicit relationship, thus corroborating, to the requisite degree, Nichols' admission of sexual intercourse with the victim. The district court did not err by denying Nichols' motion for a judgment of acquittal.

**B.    Hearsay**

Nichols contends the district court erred by permitting, over his objection, two witnesses to testify as to the victim's age because this testimony constituted inadmissible hearsay. Because this testimony was the sole evidence establishing an essential element of the crime, he contends the errors were not harmless.

The first testimony Nichols challenges as inadmissible hearsay was the victim's adoptive mother's testimony as to the victim's age at the time she was with Nichols. Because the victim was adopted, Nichols contends the mother's testimony was hearsay and was not subject to a hearsay exception. Where there is a contemporaneous objection to the admission of evidence at trial, the court has broad discretion in determining the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or deny such trial evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Perry*, 150 Idaho 209, 218, 245 P.3d 961, 970 (2010); *Smith*, 117 Idaho at 232, 786 P.2d at 1134. If the Court finds the district court erred by abusing its discretion in admitting the evidence over an objection by the defense, it then must determine whether that error is harmless beyond a reasonable doubt. *State v. Ellington*, 151 Idaho 53, 64, 253 P.3d 727, 738 (2011); *Perry*, 150 Idaho at 227, 245 P.3d at 979.

Nichols objected to the prosecutor's question at trial asking the adoptive mother about the victim's date of birth. Nichols argued the State had failed to lay a foundation as to the mother's basis of knowledge of the birth date. The district court sustained this objection. Thereafter, the prosecutor asked the mother how she had acquired the information and again asked the mother the victim's date of birth. The mother responded, "I have a birth certificate, and it says May 4, 1992." Following a hearsay objection, the mother testified, "I believe her birthday is May 4, 1992." Nichols again objected on hearsay grounds, which the court overruled upon concluding the testimony was not hearsay. Following the jury's guilty verdict, the district court issued a "Memorandum Re: Evidentiary Trial Ruling" in which it indicated the mother's testimony was, in fact, hearsay, but was admissible pursuant to Idaho Rule of Evidence 803(19), which excepts from the hearsay rule evidence of reputation concerning personal or family history.

Idaho Rule of Evidence 803(19) lists "Reputation concerning personal or family history" as an exception to the general hearsay rule:

> Reputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of a person's personal or family history.

Both parties note the absence of Idaho case law interpreting this exception. Thus, we turn to jurisdictions with substantially similar rules for guidance in this matter of first impression.

10

The underlying rationale of Rule 803(19) is that well-reputed facts concerning personal and family history are inherently reliable:

> Rule 803(19) refers to "fact[s] of personal or family history" that, due to their historical nature, are often very difficult to ascertain. Moreover, the pool of persons who have personal knowledge of an individual's birth, death, adoption, *etc.*, is typically quite small, and some or all of such persons may no longer be living at the time proof is sought. *See* 5 WIGMORE ON EVIDENCE § 1481. Reputations among family members or in the community as to such facts are considered inherently trustworthy in light of "the 'natural effusions' . . . of those who talk over family affairs when no special reason for bias or passion exists." *Id*. at § 1482. It is for these reasons that reputation evidence of facts of personal or family history is allowed.

*Commonwealth v. Collins*, 957 A.2d 237, 270 (Pa. 2008). *Accord Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 98 (3d Cir. 1999) ("[R]eputations regarding relationships and other personal and family matters within a well-defined community are considered to have the circumstantial guarantee of trustworthiness that justifies a hearsay exception."). The Third Circuit Court of Appeals has noted, however, that the trustworthiness rationale behind this exception must be supported:

> [A] proponent of Rule 803(19) evidence [must] establish that the reputation testimony arises from sufficient inquiry and discussion among persons with personal knowledge of the matter to constitute a trustworthy "reputation." Rumors and speculation are clearly insufficient in this regard. Testimony by a declarant that he heard, from some unknown source, that two people were related in some way would be inadmissible under Rule 803(19). Rather, what is required is the laying of a foundation of knowledge grounded in inquiry, discussion, interactions, or familiarity "among a person's associates, or in the community" in which he works.

*Blackburn*, 179 F.3d at 100.

Nichols contends a foundation requirement was not met in this instance because the mother "was not present at the time [the victim] was born and had no apparent personal knowledge of the circumstances of [the victim's] birth other than what she was told." Nichols argues that even assuming the testimony of an adoptive parent regarding a child's birthday falls within the Rule 803(19) hearsay exception, there was "insufficient foundation to establish the trustworthiness of the information." Nichols fails to address the fact, however, that the mother specifically testified she based her knowledge of the victim's birthdate on viewing the victim's

11

birth certificate. Nichols did not challenge the reliability of the birth certificate below and does not do so now on appeal.

The State points out that the Iowa Supreme Court addressed, under very similar circumstances, the question of whether an adoptive parent's testimony regarding her adoptive daughter's birth date fell within the hearsay exception for statements of reputation concerning personal or family history. In *State v. Mitchell*, 568 N.W.2d 493 (Iowa 1997), the defendant was charged with third degree sexual abuse, which required the state to prove the victim was fourteen or fifteen years old at the time of the abuse. The trial court permitted the victim's adoptive mother to testify as to the victim's date of birth and the Iowa Supreme Court affirmed:

> Exceptions to the general rule against hearsay are permitted with respect to pedigree where the declaration is by a relative or one in a position that he or she would likely know the facts. It is enough that the declarant had such opportunity for acquiring knowledge concerning the pedigree information as leads to a reasonable inference that the declarant possessed such knowledge.
> Although [the victim] was adopted, the declarant--the adoptive mother--was certainly in a position to know when [the victim] was born. At the very least, the adoptive mother had the opportunity to acquire such knowledge, and that opportunity would permit a reasonable inference by the jury that she possessed such knowledge.

*Id*. at 500 (citations omitted). This reasoning is sound. By virtue of her familial relationship with the victim in this case, the mother was in a position to know when the victim was born or, at the very least, to have acquired such knowledge. The mother specifically testified the victim was ten months old when she adopted her and she was given a birth certificate for the victim at the time. Thus, contrary to Nichols' argument, the mother specifically testified as to the basis of her knowledge. Under these circumstances, the requisite foundation was presented and the mother's testimony was properly admitted pursuant to Rule 803(19).[6]

---

[6] Nichols also challenges admission of the evidence, contending that pursuant to language in *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 100 (3d Cir. 1999), the district court was required to take into consideration additional factors in admitting the evidence such as how significant the evidence is to the issues disputed at trial, the availability of other evidence of the facts testified to, and the nature of the litigation. This argument is not well-taken. Nothing in the rule indicates such considerations are relevant to the applicability of the exception. Additionally, the language to which Nichols refers in *Blackburn* was contained within a citation to an evidence treatise and utilized in support of the court's determination that a foundation of knowledge must be laid. The *Blackburn* Court did not indicate consideration of such factors was required, nor did it conduct such an analysis itself in assessing the admissibility of evidence in that case. *Id*. We

Nichols also contends the district court erred by admitting Officer Fuentes' testimony regarding the victim's status as a runaway because it was hearsay and was offered and admitted for the purpose of proving the victim's age. However, because we have determined the victim's mother properly testified as to the victim's age, even if we assume error in the admission of Officer Fuentes' testimony as to this point, it would be harmless error. Error is not reversible unless it is prejudicial. *State v. Coleman*, 152 Idaho 872, 879, 276 P.3d 744, 751 (Ct. App. 2012). Trial error will be deemed harmless if the reviewing court is convinced beyond a reasonable doubt the error did not contribute to the verdict. *Perry*, 150 Idaho at 227, 245 P.3d at 979. Here, the victim's mother testified both as to the victim's age and, without objection, that she had reported the victim as a runaway. Because evidence of the victim's age and status as a runaway was properly admitted through the mother's testimony, we are convinced beyond a reasonable doubt that any reference by Officer Fuentes in this regard did not contribute to the verdict. The jury was presented with inarguably convincing evidence from the mother that the victim was under age, and thus it follows that Officer Fuentes' testimony in this regard would have little to no effect. The district court did not commit reversible error by admitting either the mother's or Officer Fuentes' testimony.

## C. Jury Instructions

For the first time on appeal, Nichols argues the district court erred by failing to properly instruct the jury. First, he contends the district court gave an incorrect elements instruction that effectively lowered the State's burden of proof for the charge of statutory rape. He also contends the court erred by failing to sua sponte instruct the jury on the *corpus delicti* rule and corroboration of his extrajudicial statement

Whether jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review. *State v. Draper*, 151 Idaho 576, 587, 261 P.3d 853, 864 (2011). We look at the jury instructions as a whole, not individually, to determine whether the jury was properly and adequately instructed. *Id.* at 577, 261 P.3d at 865. An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party. *Id.* Pursuant to the fundamental

---

find no convincing basis to impose this requirement upon a district court considering the admissibility of evidence pursuant to Rule 803(19).

error doctrine, an appellate court may only reverse an unobjected-to error when the defendant persuades the court the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

### 1. Elements instruction

Nichols contends the district court erred by giving a non-pattern jury instruction regarding the elements of statutory rape, which omitted an essential element. The instruction given indicated to the jury that to find Nichols guilty of the charge, it must find the State proved each of the following elements beyond a reasonable doubt:

1. On or between the 1st day of August 2009 and the 21st day of August 2009
2. in the state of Idaho
3. the defendant . . . did penetrate the vaginal opening of [the victim], a female person, and
4. [the victim] was under the age of eighteen years of age.

As it existed at the time however, the statutory rape statute under which Nichols was charged defined the crime as "penetration, however slight, of the oral, anal or vaginal opening *with the perpetrator's penis . . .*" I.C. § 18-6101 (2009) (emphasis added). Nichols contends that by omitting the italicized language from the elements instruction, the State was relieved of its burden to prove a requisite element of the crime and this amounted to fundamental error.

The State concedes omission of this element in the instruction was error; however, it contends it did not rise to the level of fundamental error because the error was neither plain, nor did it prejudice Nichols. According to *Perry*, where evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found the State failed to prove that element, the constitutional violation may be deemed harmless. *Perry*, 150 Idaho at 224, 245 P.3d at 976. *Cf. Draper*, 151 Idaho at 592-93, 261 P.3d at 869-70 (holding the omitted element was not harmless because the defense vigorously contested the omitted element).

Nichols did not testify, but his counsel advanced two theories in Nichols' defense at trial: (1) he did not have sexual intercourse with the victim as he had confessed to police, and (2) even if he did, the victim was not under the age of eighteen at the time. In regard to the first theory,

14

Nichols argued that admissions to sexual intercourse with the victim that he made during his police interview were not corroborated and were otherwise not reliable because they were "extracted in a windowless room" and he may have been pressured to make them. He did not, however, contest the allegation that, if sexual intercourse occurred, it happened in the only manner which he confessed it did: "penis and vaginal-style sex." Thus, the *manner* in which penetration was alleged to have occurred was not contested by Nichols, nor was there any evidence from which a reasonable jury could find, if it determined sexual contact occurred (which it obviously did in finding him guilty), that it occurred in any manner other than what Nichols confessed to police. Accordingly, Nichols has not shown that the omission of this element from the jury instruction, although error, affected the outcome of the trial. Thus, the erroneous jury instruction did not amount to fundamental error.

### 2. *Corpus delicti* instruction

Nichols also contends the district court erred by failing to sua sponte instruct the jury regarding the *corpus delicti* rule, specifically the requirement that there be independent evidence corroborating Nichols' admission of sexual intercourse. Again, because Nichols did not object to the omission of this instruction below, he must satisfy the three-prong fundamental error test established in *Perry*.

As we noted above, in order to show fundamental error, a defendant must show the alleged error violated one or more of his unwaived *constitutional* rights. *Perry*, 150 Idaho at 226, 245 P.3d at 978. Nichols has failed to satisfy this requirement. As the *Suriner* Court made clear in discussing the basis of the rule and eventually abolishing it, the *corpus delicti* doctrine is not rooted in constitutional protections, but is a judicially-created doctrine first recognized in Idaho by the Supreme Court in 1902. *Suriner*, 154 Idaho at 83, 294 P.3d at 1095. Thus, Nichols has not shown the alleged erroneous failure to instruct the jury as to the necessity for corroborating evidence of his admission violated an unwaived constitutional right and, in turn, has not shown fundamental error occurred.

### D. Prosecutorial Misconduct

Finally, Nichols contends the prosecutor committed misconduct during closing arguments that rose to the level of fundamental error by misstating the testimony provided at trial and introducing facts not in evidence. When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as

to result in fundamental error. *Perry*, 150 Idaho at 228, 245 P.3d at 980; *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). As a threshold, we must determine factually if there was prosecutorial misconduct. *See Field*, 144 Idaho at 571, 165 P.3d at 285.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *Field*, 144 Idaho at 571, 165 P.3d at 285; *State v. Betancourt*, 151 Idaho 635, 639, 262 P.3d 278, 282 (Ct. App. 2011). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. A fair trial is not necessarily a perfect trial. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Betancourt*, 151 Idaho at 639, 262 P.3d at 282; *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole. *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011). The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Carson*, 151 Idaho at 718-19, 264 P.3d at 59-60.

Nichols contends the prosecutor, twice during closing arguments, misrepresented testimony and argued facts not in evidence. The first instance occurred when the prosecutor was discussing the testimony of Officer Fuentes. When referring to the officer's discussion with the victim, the prosecutor characterized the officer's testimony as follows:

> During the course or based upon what he learned from that interview with [the victim], he felt something wasn't right. And because he felt something wasn't right about what he heard, he then passed his report on to the detective division so further investigation could be performed.

Nichols contends there was never any testimony about what the victim told Officer Fuentes and the officer did not testify "as to having any sort of feeling that something 'wasn't right,' based upon his conversation" with the victim.

The second instance Nichols argues constituted misconduct was the prosecutor's statement regarding Detective Larsen's testimony. Specifically, the prosecutor stated the detective testified that not only did Nichols state he and the victim shared a bedroom in Nichols' apartment, but that they had shared a bed in this room. Nichols contends this was not the substance of Detective Larsen's testimony; rather, Detective Larsen only testified Nichols said he shared a room with the victim, not that Nichols actually shared a bed with her.

Neither of these instances amounted to prosecutorial misconduct, let alone fundamental error. As noted above, during closing argument each side is entitled to discuss fully, from their respective standpoints, the evidence and the *inferences* to be drawn therefrom. *Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. Relevant to the statement in regard to Officer Fuentes, the officer had specifically testified he interviewed the victim and based upon what occurred in the interview, he turned the case over to the detective division to pursue. Detective Larsen testified he began investigating the case after receiving a report from Officer Fuentes "that he had located a runaway in the City of Mountain Home, and there had been possible other illegal contacts involving with [sic] her." From this evidence, it was a reasonable inference that Officer Fuentes felt something "wasn't right" after his interview with the victim. Logically, he would not have turned the case over to Detective Larsen for further investigation had he been without concern and suspicion regarding the situation. Thus, the prosecutor's statements in this regard were not improper.

In regard to the sleeping arrangements statement, this too was a reasonable inference from the facts in evidence. Detective Larsen testified Nichols made several admissions, including that he and the victim were in a "dating relationship," that they shared a bedroom in the two-bedroom apartment and, since living in Idaho, they had engaged in sexual intercourse approximately two to three times a week. That the two shared a bed was a reasonable inference from this evidence. Again, the prosecutor's statements in this regard were not improper. Nichols has failed to show the prosecutor engaged in misconduct during closing arguments.

17

## III.

## CONCLUSION

Even assuming the Supreme Court's abolition of the *corpus delicti* rule in *Suriner* does not apply retroactively, the district court did not err by denying Nichols' motion for a judgment of acquittal; there was sufficient corroborating evidence of Nichols' confession to satisfy the rule. The district court also did not err in permitting the victim's adoptive mother to testify as to the victim's age because the testimony was properly admitted pursuant to the personal or family history exception to the hearsay rule. Any error in allowing Officer Fuentes to testify that the victim was a runaway was harmless because convincing evidence of the victim's age was properly admitted through the mother's testimony. The district court's error in giving a non-pattern elements instruction to the jury that omitted an element of statutory rape did not constitute fundamental error because Nichols has not shown he was prejudiced by the omission. Similarly, the district court's failure to sua sponte instruct the jury as to the *corpus delicti* rule did not amount to fundamental error because Nichols has not shown such a failure implicated an unwaived constitutional right. Finally, the prosecutor did not engage in misconduct during closing argument because the disputed statements were reasonable inferences from the evidence presented at trial. Nichols' judgment of conviction for statutory rape is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**